CONNECTICUT INSURANCE GUARANTY ASSOCIATION *v.*
RAYMARK CORPORATION ET AL.
(13741)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued April 5—decision released June 5, 1990

*Joseph C. Tanski,* with whom were *Arthur W. Young
III* and, on the brief, *David J. Kramer, James A. Ful-
ton* and *Douglas S. Skalka,* for the appellant-appellee
(plaintiff).

*Richard C. Robinson,* with whom, on the brief, were *Frank K. Heap* and *Joan S. Kato,* for the appellees-appellants (named defendant et al.).

PER CURIAM. The plaintiff, Connecticut Insurance Guaranty Association (CIGA), is a nonprofit unincorporated legal entity created pursuant to General Statutes § 38-276 for the purpose of providing a resource for persons insured by or having claims against policies issued by an insurance company that has become insolvent. The defendants are Raymark Corporation and two of its affiliates (collectively referred to as Raymark); the receiver of Transit Casualty Company (Transit), a Missouri insurance company that issued policies insuring Raymark against liability but has been declared insolvent and is now in receivership;[1] Connecticut Bank and Trust Company (CBT), which is the assignee of certain rights to recover under some Transit policies;[2] and ten other insurance companies that insure Raymark for liability.

The factual background that has given rise to the issues that CIGA seeks to resolve by a declaratory judgment is not disputed. The Raymark affiliated companies have their principal place of business in Trumbull and are the successors to Raybestos-Manhattan, Inc. (Raybestos), a corporation that was dissolved in 1982. This corporation from 1929 until 1982 manufactured and sold products, some of which contained asbestos, a carcinogenic and otherwise toxic substance. Because

---

[1] In December, 1985, Transit Casualty Company, a Missouri insurance company licensed to do business in Connecticut, was declared insolvent and placed into receivership by the Circuit Court of Cole County, Missouri. The record does not disclose whether anyone has been appointed to represent creditors, such as those having claims against Raymark, in that proceeding.

[2] The record does not disclose the nature of these rights. It does not appear that they relate to the claims of those injured by the activities of Raymark or its predecessor, Raybestos-Manhattan, Inc.

of these activities, numerous personal injury claims have been filed against Raymark that are covered by liability policies issued by the eleven insurance company defendants. As of January 29, 1988, 59,817 claims had been filed against Raymark, mostly by workers exposed to asbestos-containing products claimed to have been manufactured by Raybestos. Of these claims, 27,741 had been settled or had proceeded to judgment, leaving 32,076 claims pending. Additional claims were being filed at the rate of about 1000 per month. The average cost of settling each claim has been $5000.

Of the $393,000,000 of liability coverage available for payment of these asbestos related claims, the only coverage under policies issued by solvent insurers that has not yet been exhausted amounts to $30,000,000. Some of this remaining coverage is, however, senior to that provided under the policies issued by the defendant Transit, which has become insolvent and is in receivership. The six Transit policies purport to provide $32,000,000 of liability coverage for Raymark. CIGA, by virtue of the Connecticut Insurance Guaranty Association Act, General Statutes §§ 38-273 through 38-289, is now obligated to assume Transit's obligations under these policies.

CIGA brought this declaratory judgment action to resolve issues that have arisen concerning the extent of its obligation pursuant to General Statutes §§ 38-278 and 38-282 to pay "covered claim[s]," as defined by General Statutes § 38-275 (6). Of the ten specific declarations sought by CIGA, two involve the interpretation of a provision of § 38-278 that restricts its obligation to pay covered claims to those exceeding $100 but not in excess of $300,000. Two others concern the provision of § 38-282 requiring a person having a covered claim that is also a basis for a claim under a policy issued by a solvent insurer first to exhaust his rights against such insurer. Two more relate to whether

covered claims should be reduced by amounts the claimant has received or was eligible to receive by virtue of workers' compensation, medical insurance, or policies with other solvent insurers, including those whose policies provided coverage for claims against Raymark after exhaustion of the limits of the Transit policies. The remaining declarations sought by CIGA raise questions about (1) the effect of liens filed against a claimant's recovery by insurers, (2) the effect of payments received by claimants from sources other than insurance in reducing covered claims, (3) the obligation of CIGA to assess its members in the event that claims exceed its current resources, and (4) the duty of CIGA to defend Raymark and the application of defense expenses to a reduction of the Transit policy limits.

The trial court, upon motions of the plaintiff and Raymark for summary judgment, rendered a declaratory judgment ruling that the $300,000 claim limit of § 38-278 "applies to each claim and not the policies; that the defendant Raymark Corporation has no duty to exhaust underlying as well as excess policies before presenting a claim; that [CIGA] is prohibited by statute from paying any amounts to any of the defendant Raymark Corporation's other insurers; that [CIGA] is prohibited from paying any amounts to Raymark Corporation which are subject to any claim or lien by any of said defendant's other insurers to the extent that other insurers have liens or claims, which would be satisfied out of payments made by the plaintiff; that the $100 deductible applies to each claim and not to each policy; and that [CIGA] has a duty to pay defense costs if the Transit policies so provide." CIGA has appealed from this judgment and Raymark has cross appealed.

During argument of these appeals, this court suo motu raised the jurisdictional question of whether there has been compliance with the provision of Practice

Book § 390 stating that "[t]he court will not render declaratory judgments upon the complaint of any person . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." None of the fifteen defendants whom CIGA has joined in this action can be said to represent the interests of those who have been injured by the asbestos products manufactured by Raymark or its predecessors and who have filed and continue to file claims relating to asbestos. These purported victims of Raymark's manufacturing activities have not been made parties, nor does the record indicate that they have been given notice of this action. Because these persons have claims against Raymark that are covered by the Transit policies, they have "an interest in the subject matter of the complaint," which seeks, inter alia, to determine the parameters of those claims. Certainly the resolution of the questions raised in the complaint concerning the extent of CIGA's liability under § 38-278 for covered claims, its right to insist upon the exhaustion of other insurance policies pursuant to § 38-382, and its claim to a credit for amounts received or recoverable by injured claimants from various other sources, will have a significant impact upon the interests of those who may be victims of Raymark's products.[3]

It is generally held that an injured person having a claim against an insured tortfeasor has a legal interest in a coverage dispute with the insurer and must be either notified or joined as a party in a declaratory judgment action to decide the coverage question. *Maryland Casualty Co.* v. *Consumers Finance Service, Inc.,* 101

---

[3] Most of the determinations made by the trial court in the declaratory judgment appear to be favorable to injured claimants, but this is not entirely clear. In any event, we cannot fairly review the plaintiff's claims of error with respect to issues involving the rights of such claimants without affording them an opportunity to be heard.

F.2d 514, 515 (3d Cir. 1938); *Central Surety & Ins. Corporation* v. *Caswell,* 91 F.2d 607, 608 (5th Cir. 1937); *Southern Farm Bureau Casualty Ins. Co.* v. *Robinson,* 236 Ark. 268, 271, 365 S.W.2d 454 (1963); *Updike Investment Co.* v. *Employers Liability Assurance Corporation,* 128 Neb. 295, 297, 258 N.W. 470 (1935); *Trinity Universal Ins. Co.* v. *Willrich,* 13 Wash. 2d 263, 271, 124 P.2d 950 (1942); annot., 71 A.L.R.2d 723, 747–52. "Persons who have been injured in an automobile accident are certainly proper parties to a suit by the liability insurer to determine the coverage of its policy, and the better rule would seem to be that they are both proper and necessary parties to the maintenance of the suit." 20 J. Appleman, Insurance Law and Practice § 11371.

Compliance with the requirement of § 390 (d) for notification or joinder of all those "having an interest in the subject matter of the complaint," has been regarded by this court as essential to the jurisdiction of a court to render a declaratory judgment. *Cavalli* v. *McMahon,* 174 Conn. 212, 215, 384 A.2d 374 (1978); *Salamandra* v. *Kozlowski,* 173 Conn. 136, 376 A.2d 1103 (1977). Even before the advent of our declaratory judgment act, General Statutes § 52-29, in 1921, we had recognized the necessity for giving persons whose rights might be affected by a court proceeding an opportunity to be heard. "It is the settled rule of this jurisdiction, if indeed it may not be called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests, until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard." *Ackerman* v. *Union & New Haven Trust Co.,* 91 Conn. 500, 508, 100 A. 22 (1917).

We conclude that the trial court erred in rendering a declaratory judgment in this case before some representative of the interests of those having personal injury claims against Raymark, and thus having an interest in the Transit policies insuring its liability, had been joined in this action or notified of its pendency. Although these claimants are undoubtedly too numerous for all of them to be made parties, our statutes and rules of practice provide for allowing some defendants to represent others having similar interests. General Statutes §§ 52-105, 52-107; Practice Book §§ 87 through 90. The plaintiff should have joined some of the claimants, or persons authorized to represent them, as defendants and should have obtained authority from the court for these defendants to represent the class of claimants. As an alternative, the plaintiffs should have obtained an order of notice for the purpose of informing the claimants of the pendency of this action. See *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 484, 196 A. 344 (1937).

The conclusion we have reached that the court lacked subject matter jurisdiction to render its declaratory judgment does not require that the action be dismissed upon remand, because the jurisdictional defect can be cured by further proceedings in the trial court. We must, however, set aside the judgment in view of the lack of jurisdiction.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.