[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff instituted this action for a declaratory judgment to challenge the validity of an inland wetlands regulation promulgated by the defendant[1] and the defendant's action declaring that the plaintiff's inland wetlands permit had expired. The plaintiff also seeks equitable relief.
 I.
The plaintiff, TMK Associates, owns certain property in East Lyme, Connecticut, a portion of which contains inland wetlands. On October 17, 1988, the defendant Conservation Commission, after a public hearing, issued the plaintiff an inland wetlands permit to construct residential roadway and driveway crossings within the residential single-family lot subdivision proposed by the plaintiff (Plaintiff's Exhibit A). The plaintiff caused certain work to be performed within the proposed subdivision area which included the location of test pits, digging of test holes, staking of roads and corner lots by surveyors, clear-cutting of land, including a swath approximately 60 feet wide and 1,000 feet long along the line of the roadway shown on the subdivision map; a design of a connection road to Stone Cliff Drive with a redesign of adjacent lots, and drawing of plan details and plan revisions and installation of ground water wells. All of this work was performed within one year of the issuance of the plaintiff's permit. However, the vast majority of the work was done outside of the inland wetland and buffer areas. The plaintiff CT Page 196 and its engineer, after October 17, 1989, caused work on the subdivision to be performed which included additional testing by plaintiff's engineer and the town sanitarian, consultations with various town staff members, weekly monitoring of the wells, and in early 1990, the completion and submission of subdivision plans to the Town Planning Commission for approval (Plaintiff's Exhibit E). The plaintiff incurred costs in excess of $80,000 for all of this work.
In response to a request by the East Lyme environmental planner, counsel for the defendant rendered an opinion that the plaintiff's permit had expired because no significant work had been initiated by the plaintiff (Plaintiff's Exhibit G). On April 2, 1990, during one of its regular meetings, held without notice to the plaintiff, the defendant ruled the permit invalid (Plaintiff's Exhibit J). The defendant based its decision on Section 7.2 of the East Lyme Inland Wetland and Watercourses Regulations (regulations) (Plaintiff's Exhibit G). Section 7.2 states: "A permit shall expire one (1) year after its approval if no significant work for which the permit was issued has occurred." But, the plaintiff's permit itself notes that, "If there is no significant work initiated within one (1) year, reapplication must be made to activate this permit." (Plaintiff's Exhibit (B.)
The plaintiff filed suit against the defendant commission; Leslie Carothers, the Commissioner of the State Department of Environmental Protection (DEP); and the East Lyme Town Clerk. In a letter filed on March 6, 1991, the DEP commissioner declined to participate in this case.
The plaintiff filed an amended complaint and both parties filed pre- and post-trial briefs, and the Court heard evidence on divers days.
The court notes that on March 4, 1991, the defendant approved the plaintiff's application for a second inland wetlands permit regarding the subject property. (See Plaintiff's Exhibit C). The parties stipulated that the second, permit does not allow the plaintiff to fill in as much wetlands as the first permit allowed; the defendant's motion to dismiss the plaintiff's action for mootness and availability of another remedy was heard and denied.
 II.
The plaintiff seeks a declaratory judgment that Section 7.2 of the East Lyme Inland Wetlands Regulations is unconstitutional on its face and as applied to the plaintiff, and an order declaring the defendant's revocation of the CT Page 197 permit void.
Declaratory Judgment
Declaratory judgments are not appropriate,
 (a) unless (the plaintiff) has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or
 (b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; or
 (c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or
 (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof.
Practice Book Section 390.
"The declaratory judgment procedure. . .is peculiarly well adapted to the judicial determination of controversies concerning constitutional rights and. . .the constitutionality of state legislative or executive action." Horton v. Meskill,172 Conn. 615, 626, 376 A.2d 359 (1977). "Declaratory judgment proceedings are appropriate for determining rights in connection with the regulations of an administrative agency." Aaron v. Conservation Commission, 178 Conn. 173, 177 (1979) (Aaron I).
The plaintiff alleges that it has suffered serious economic loss because its permit was revoked and that uncertainty exists as to its rights under Section 7.2 of the regulations. Soon after filing suit, the plaintiff applied for an order of notice, in which it moved that residents of East Lyme be given notice of this suit by publication in the New London Day.
Declaratory judgment procedure would be the proper form of redress in this case as notice was published as specified above. "Compliance with the (notice) requirement. . . CT Page 198 has been regarded by this court as essential to the jurisdiction of a court to render a declaratory judgment." Connecticut Ins. Guaranty Ass'n. v. Raymark Corp., 215 Conn. 224,229 (1990). Newspaper publication satisfies the plaintiff's burden to give reasonable notice when actual notice would be too burdensome. Young v. Chase, 18 Conn. App. 85,95-96, cert. denied, 211 Conn. 807 (1989). See Wenzel v. Danbury, 152 Conn. 675, 677 (1965) (Reasonable notice to citizens of town and city of Danbury required regarding constitutionality of, inter alia, Danbury ordinance).
The court finds that all interested persons did have reasonable notice of this action and that the other requirements of Practice Book Section 390 have been met, and therefore, the court proceeds to treat this action on the merits.
 III.
A. In seeking Section 7.2 of the defendant's regulations ruled unconstitutional, the plaintiff argues that: Section 7.2 violates state and federal procedural due process principles because it allows the defendant to revoke the plaintiff's permit without notice or a hearing; the regulation is unconstitutionally vague; and Section 7.2 should be ruled void because it conflicts with other East Lyme regulations and the General Statutes.
The defendant claims that: the Commission correctly decided that no significant work had taken place; the regulation is not vague; the regulation was within the defendant's authority to enact; the permit is not a vested property interest to which due process rights attach; and the regulation does not conflict with other regulations or statutes.
B. Constitutional Issues
It is well established in Connecticut that constitutional issues are not considered "`unless absolutely necessary to the decision of a case.'" Manchester Sand 
Gravel Co. v. South Windsor, 203 Conn. 267, 270 (1987) quoting State v. Della Camera, 166 Conn. 557, 560-61 (1974). See also Builders Services Corporation v. Planning Zoning Commission,208 Conn. 267, 306 (1988).
It is evident that the constitutional issues need not be addressed because statutory construction provides a basis for treating and deciding the plaintiff's declaratory judgment action. CT Page 199
C. Statutory Analysis
The plaintiff argues, inter alia, that Section 7.2 of the East Lyme Regulations is invalid because it conflicts with General Statutes Section 22a-42a(d). Section 22a-42a(d) provides in relevant part:
 The agency may suspend or revoke a permit if it finds after giving notice to the permittee of the facts or conduct which warrant the intended action and after a hearing at which the permittee is given an opportunity to show compliance with the requirement for retention of the permit, that the applicant has not complied with the conditions or limitations set forth in the print or has exceeded the scope of the work as set forth in the application.
The plaintiff asserts that because Section 7.2 does not allow permit holders to receive notice and a hearing prior to expiration of the permit, it conflicts with General Statutes Section 22-42a(d), as set forth above. The plaintiff also argues that Section 7.2 conflicts with Section 11.2 of the regulations, which is identical, in relevant part, to the language of General Statutes Section 22a-42a(d).
The defendant argues that Section 11.2 of the regulations is inapplicable to this case because it deals with the procedure to be followed when permits are suspended or revoked, not when a "permit expires in and of itself," as occurred in this case. Therefore, the defendant argues that Section 7.2 and Section 11.2 do not conflict. The defendant also argues that Section 7.2 does not conflict with General Statutes Section 22a-42a(d); however, the defendant focuses on a different part of subsection (d) than the one at issue. Nevertheless, because Section 11.2 of the regulations and Section 22a-42a(d) are identical in relevant part, and the defendant argues that Section 11.2 does not conflict with Section 7.2, both parties' arguments on this issue are before the Court.
Section 22a-42 (a) of the General Statutes requires municipalities to regulate activities affecting inland wetlands within their boundaries. Subsection (e) defines, in relevant part, the scope of permissible regulations: "Municipal . . . regulations may embody any regulations promulgated hereunder, in whole or in part, or may consist of other ordinances or regulations in conformity with regulations CT Page 200 I promulgated hereunder. Any ordinances or regulations shall be for the purpose of effectuating the purposes of Sections22a-36 to 22a-45 (the Inland Wetlands and Watercourses Act), inclusive . . . ." The Inland Wetlands Watercourses Act (IWWA) is a "broad statutory mandate authorizing regulations on both the state and local levels . . . ." Aaron v. Conservation Commission, 183 Conn. 532, 541 (1981) (Aaron II). See also Mario v. Fairfield, 217 Conn. 164, 168-69 (1991). "That a matter is of concurrent state and local concern is no impediment to the exercise of authority by a municipality through the enactment of an ordinance, so long as there is no conflict with the state legislation. Aaron II, supra, 543.
Regulations are presumed valid unless their invalidity is proven beyond a reasonable doubt. Id., 537; Mario, supra, 169. Agencies authorized to enact regulations are vested with a large measure of discretion. Aaron II, id.; Mario, id.
"Where the state legislature has delegated to local government the right to deal with a particular field of regulation, the fact that a statute also regulates the same subject in less than full fashion does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner." Aaron II, supra, 543. Accord, Lizotte v. Conservation Commission, 216 Conn. 320,333 (1990).
Statutes and the regulations promulgated under them should be read together. See Rogers v. Commission on Human Rights Opportunities, 195 Conn. 543, 547 (1985); Connecticut Mobile Home Assn., Inc. v. Jensen's, Inc. 178 Conn. 586, 590
(1979). "Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives." Dwyer v. Farrell, 193 Conn. 7, 12 (1984) (citing Aaron II). Although "(t)he IWWA `envisages its adaptation to infinitely variable conditions for the effectuation of the purposes of these statutes;'" Mario, supra, 169, quoting Aaron II, supra; "`(t)he power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the legislature.' Salmon Brook Convalescent Home v. Commission on Hospitals Health Care,177 Conn. 356, 363 (1979)." Plastic Distributors, Inc. v. Burns, 5 Conn. App. 219, 225 (1985).
The regulation at issue, Section 7.2, has no counterpart in the IWWA. However, pursuant to General Statutes CT Page 201 Section 22a-39 (f), the DEP Commissioner promulgated regulations under the IWWA. Section 22a-39-7.4 of the DEP regulations provides: "Initiation of activity under a permit shall be within one year of the granting of the permit, unless the time period is extended by the Commissioner." The East Lyme regulation differs from this state regulation in that East Lyme requires "significant work for which the permit was issued" to have occurred within one year, and if it has not, the permit expires. Clearly, the East Lyme regulation is more stringent than the state regulation in two ways: "significant work" implies more activity than "initiation" of activity; also, the state regulation makes no mention of failure to comply with its terms while the East Lyme regulation provides for the permit's expiration.
Both the General Statutes and the state regulations set forth penalties that can be imposed and actions that can be taken against permit holders who violate the statutes, regulations, or terms of the permit itself. Accordingly, under both the IWWA and the state regulations the agency may suspend or revoke the permit "after giving notice to the permittee of the facts or conduct which warrant the intended opportunity to show compliance with the requirements for retention of the permit, that the applicant has not complied with the conditions or limitations set forth in the permit or has exceeded the scope of the work as set forth in the application." General Statutes Section 22a-42a-(d). See also Regs., Conn. State Agencies, Sec. 22a-39-9.5. Also, "(i)f the Commissioner determines that any person is engaging in any regulated activity without a proper permit, or is exceeding the conditions or limitations placed on his permit or the scope of work as set forth in the application. . .or has engaged or is engaging in any other violation of these regulations or the Act, the Commissioner may: a. Issue a cease and desist order. . .pursuant to Section 22a-7 (which requires that a hearing be held within 10 days). . .b. Revoke or suspend any permit. . . ." Regs., Conn. State Agencies, Sec. 22a-39-9.4. In case of a revocation or suspension, notice of the decision must be mailed and published within five days, and prior to the revocation or suspension becoming effective, "the commissioner shall afford the applicant opportunity to show compliance with all lawful requirements for retention of the permit." (Regs., Conn. State Agencies Sec. 22a-39-9.5). If the Commissioner finds that the public health, safety or welfare is imperiled, a summary suspension may be ordered "pending proceedings for revocation or other action." Id. General Statutes Section 22a-44 (a) also allows agencies to issue cease and desist orders if any person violates the statutes or regulations, but requires the agency to hold a hearing within ten days of the issuance. Monetary penalties may also be CT Page 202 assessed against violators. See Sections 22a-44 (b); 22a-6b.
It is evident that the Inland Wetlands statutes and DEP regulations mandate a policy whereby permits, once issued, may not be taken away from the holder without notice or the opportunity to present proof of facts to support retention of the permit. As appeals from a municipal inland wetlands agency are governed by the Uniform Administrative Procedure Act (UAPA), this view is buttressed by General Statutes Section4-182 (c) which provides:
 "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements the retention of the license."
The court concludes that the defendant misinterprets Section 7.2. Neither Section 7.2 or the permit condition itself cause a permit to expire of its own accord: someone has to make the discretionary decision that no "significant work" has occurred or been initiated. Then, such a determination at the passing of one year would result in the defendant's decision that the permit has expired. According to Black's Law Dictionary (1979 5th ed.), expiration is defined as "(c)essation; termination from mere lapse of time, as the expiration of a lease, insurance policy, statute, and the like." Although Section 7.2 uses the word "expire," the need for the exercise of discretion in determining whether "significant work" has occurred or been initiated does not constitute an expiration as the defendant argues. Rather, the process of declaring the plaintiff's permit `expired' as Section 7.2 purports to allow is more accurately described as a revocation.
Two Superior Court decisions provide some guidance. In Manchester Environmental Coalition v. Planning Zoning Commission, 41 Conn. Sup. 184, 564 A.2d 639 (1988), the Manchester Planning Zoning Commission, operating as the town inland wetland agency, granted a permit to construct on wetlands after finding no significant impact to the subject environment. The plaintiffs appealed and argued, inter alia, that the defendant failed to hold a hearing regarding environmental impact. The pertinent town inland wetland regulations required a public hearing upon a finding of significant impact but did not require one if the agency found CT Page 203 no significant impact. The plaintiffs argued that the regulations were in conflict with General Statutes Section22a-39 (k), which allows the DEP commissioner to waive the required public hearing if the commissioner finds no significant impact. The court found the regulation and the statute consistent because "no public hearing is mandatory in the event that either the state commissioner or the local commission finds that no significant impact exists." Id., 191.
However, the case before the court is distinguishable because the state statutes and regulations do not authorize the taking away of a permit without notice and a hearing while the East Lyme regulation does. Manchester Environmental Coalition is only helpful to show that procedural as well as substantive town regulations must conform with the IWWA and the state regulations.
In the second case, Sakonchick v. Conservation and Inland Wetlands Commission, Superior Court, Judicial District of Middlesex, Docket No. 56474 (April 1, 1991), the plaintiff appealed the defendant's decision requiring a reapplication for an inland wetlands permit. The defendant had ruled that the plaintiff had not initiated activity within six months after receiving the permit, and therefore, the permit apparently expired. The court sustained the appeal, finding the defendant's decision to be arbitrary and illegal in that the applicable state DEP regulation only required "activity" to be initiated while the town required "significant" and not "minimal" activity. The court, Hendel, J., found no support in the record for the agency's definition of "activity." Therefore, in Sakonchick, the court refused to defer to the agency's judgment and construed "activity" in its common-sense way.
Similarly, in this case, the court has before it a town regulation which imposes a more onerous burden than "initiation" of significant work (although the permit condition only requires initiation of such work) without providing guidance as to its definition of "significant work."
The court concludes that Section 7.2 does not conform with the statutes and state regulations because notice and a hearing were not provided to the plaintiff before the permit was declared invalid. Therefore, Section 7.2 of the East Lyme regulations violates General Statutes Section22a-42 (e), which requires regulations to conform to the statutes, and is invalid as applied to this plaintiff. Accordingly, the defendant's action under it is void.
IV. CT Page 204
Having determined that Section 7.2 of the defendant's regulations is invalid, and the defendant's action thereunder void, as applied to this plaintiff, the court now turns to what further relief, if any, is to be granted to the plaintiff, as the plaintiff's permit was issued for a period of two years, which allowed the plaintiff's work to be completed by October 17, 1990. That date has long passed.
Ordinarily, the interpretation of a statute (or regulation) by an agency created to administer that statute is traditionally accorded great deference. E.I.S., Inc. v. Board of Registration, 200 Conn. 145, 148 (1986). However, the degree of such deference is limited when there is no record of consistent agency practice in regard to the particular regulation relied upon. Beechwood Gardens Tenants' Assn. v. Department of Housing, 214 Conn. 505, 510 (1990). In this case, the evidence showed that neither agency members nor its staff members had a uniform, clear or concise definition of "significant work."[2] Nor was any such definition in written form. Nor was any standard promulgated by the defendant or its staff so that a reasonable person in the position of a permittee could objectively determine from the record "when significant work" has occurred (by the terms of Section 7.2) or has been initiated (by the terms of the permit). Plaintiff's Exhibit B.
It is well settled that the construction and interpretation of a statute is a question of law where the administrative decision is not entitled to special deference, particularly where the statute has not been subject to judicial scrutiny or time tested agency interpretations. New Haven v. FOI, 205 Conn. 767, 773-74 (1988).
It is also a general principle that terms in a statute or regulation are to be given meanings according to their commonly approved usage of language. "Initiate" is defined as "to begin, set going or originate;" "occur" is defined as "to happen; take place; come to pass." Random House Dictionary of the English Language, Unabridged Edition, 1966. The language also must be construed in a common-sense manner and in relation to the existing circumstances. The defendant argues essentially that the "significant work" necessary to maintain the validity of the plaintiff's permit must have been tangible in nature and within the inland wetlands regulated area. The defendant further argues that since its staff members viewed the site and observed no such work, it was not "significant." However, the court also heard from plaintiff's engineer, Gerwick, who testified that some clearing had been done within a wetland area and within a buffer zone, both CT Page 205 areas within the defendant's authority to regulate.
Moreover, while Section 7.2, narrowly construed, appears to imply that the "significant work" must have occurred within the regulated area, the provision in the permit requiring "significant work" to be initiated within one year contains no such limitation.
The court finds, as a fact, that the work testified to by Gerwick was visible, and could have been pointed out to staff member Icard, or to the defendant Commission, had there been a hearing.
The court notes General Statutes Section 22a-42a(d), which provides in pertinent part:
 "No person shall conduct any regulated activity within an inland wetland or water course, which requires. . .subdivision approval without first having obtained. . . subdivision approval. . .or other documents establishing that the proposal complies with the. . .subdivision requirements adopted by the municipality. . . ."
Section 10.2 of the defendant's regulations is in accord.
These sections prohibit any regulated activity, i.e., filling, excavation, etc., within a regulated area until subdivision approval is obtained for the obvious reason that wetlands should not be disturbed or destroyed until it is clear that the project could go forward.
As both General Statutes Section 22a-42a(d) and Section 10.2 of the regulations require subdivision approval before any work can be done in the wetlands, applying for such approval and the concomitant testing, engineering, road clearing, planning, calculations and other work necessary as a part of the application are integral and critical steps that must first be taken. As such, they are implicitly part of the, work embraced within the permit issued by the defendant. The word significant is defined as "important; having consequence." Random House, supra.
Viewed in a common sense manner, (and bearing in mind the various regulatory tensions and tugs of war involved when a developer must obtain approvals from more than one administrative agency and the time involved in obtaining approvals for complex projects) when applied to a subdivision proposal containing inland wetlands, the court concludes that CT Page 206 "significant work" includes work done toward gaining the approvals sought whether within or without the regulated area. The work plaintiff caused to be performed prior to October 17, 1989, both tangible and intangible, was important and of consequence, and therefore, significant. This is especially so, where, as here, the inland wetland area was a very small portion of the entire subdivision area, and the portion of the inland wetland area in the project to be disturbed was less than 1 percent of the whole.
Declaratory judgments and relief are appropriate when other remedies are either not available, or, would not be as speedy, adequate and appropriate as the relief requested. See Aaron I, supra 179.
And, a declaratory judgment proceeding has been ". . . characterized. . . as a special statutory action and therefore distinct from one seeking the imposition of equitable relief; (citations omitted); the trial court may, in determining the rights of the parties, properly consider equitable principles in rendering its judgment." Middlebury v. Steinmann, 189 Conn. 710,715 (1983).
The defendant having declared the plaintiff's permit invalid at its meeting of April 12, 1990, deprived the plaintiff of its ability to pursue its subdivision approval application before the Planning Commission (See General Statutes Section 8-25; Plaintiff's Exhibit E), although its permit was originally issued for a two-year period, or until October 17, 1990. The plaintiff would have also been able to apply to the defendant for extensions if the work was not completed by October 17, 1990, pursuant to Section 7.2 of its regulations, had its permit not been declared invalid. To simply remand this case to the defendant for further proceedings, without more, would only create further unnecessary delay to the detriment of the plaintiff.
There was substantial evidence before the court of the nature and extent of the work caused to be performed by the plaintiff in the project. There was also evidence from the defendant's own staff that extensions of the one-year limitation are routinely granted by the defendant upon request. The purpose of the one-year limitation is to review the situation and to determine if a change in circumstances had occurred, so that the defendant would have the opportunity to modify the permit, or even deny the request for an extension after hearing. No evidence of any change in circumstances as of October 17, 1989 was adduced. The court concludes from the record the defendant would have had no rational basis to deny a request to extend the permit, had CT Page 207 timely or even untimely application therefore been made. See section 5.11(D) of the regulations.
Accordingly, considering all of the circumstances of this case, judgment is entered for the plaintiff as follows:
1. Section 7.2 of the East Lyme Conservation Commission's regulations, as applied to the plaintiff is invalid, and the defendant's action declaring the plaintiff's permit invalid is void and of no effect.
2. The defendant is ordered to reinstate the plaintiff's permit under the same terms and conditions upon which it was previously issued, with an expiration date, subject to extension as provided by the regulations, not less than six and one-half months from the date this judgment becomes final.
3. Taxable costs are allowed to the plaintiff.
TELLER, J.