37 HUNTINGTON STREET, H, LLC *v.*
CITY OF HARTFORD
(AC 20522)

Schaller, Zarella and Peters, Js.

Argued December 5, 2000—officially released April 3, 2001

*Kerry M. Wisser*, with whom was *Nathan A. Schatz*, for the appellant (plaintiff).

*Denise E. Aguilera*, assistant corporation counsel, with whom were *Delroy Shirley*, senior assistant corporation counsel, and, on the brief, *Kevin G. Dubay*, corporation counsel, for the appellee (defendant).

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Linda S. Charet* filed a brief for the Federal Deposit Insurance Corporation as amicus curiae.

*Opinion*

PETERS, J. The dispositive issue in this case is whether 12 U.S.C. § 1825 (b)[1] entitles an owner of real property to immunity from municipal tax liens for the period of time during which the Federal Deposit Insurance Corporation (FDIC)[2] held a security interest in the property. This is an issue of federal law that comes to this court as a matter of first impression. The trial court adjudged the municipal tax liens to be valid and enforceable despite the FDIC's mortgage. We affirm the judgment of the trial court.

The plaintiff, 37 Huntington Street, H, LLC (landowner), brought this declaratory judgment action against the defendant city of Hartford (city) to contest

---

[1] Section 1825 (b) of title 12 of the United States Code provides in relevant part: "When acting as a receiver, the following provisions shall apply with respect to the Corporation:

"(1) The Corporation . . . shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

"(2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

"(3) The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property . . . tax . . . ."

[2] Pursuant to 12 U.S.C. § 1811 et seq., the FDIC is an independent federal agency that has the responsibility of promoting the stability of the banking system in this country.

the validity of involuntary tax liens[3] for unpaid real property taxes assessed on property in which the landowner now holds a fee interest. The city asserted its authority to conduct a tax foreclosure sale to collect the unpaid taxes from the landowner.

The trial court's careful and thorough memorandum of decision states the uncontested facts. As reported in the city's tax lists, the unpaid real property taxes at issue accrued during the years 1994, 1995 and 1996. During these years, the FDIC held a property interest as a result of a mortgage on the real property. The FDIC acquired the mortgage in 1994 as a result of its receivership of property formerly owned by a failed Connecticut banking institution. The FDIC's interest in the property ended in 1999, when the foreclosure court approved a foreclosure by sale.

Subsequent to the foreclosure, the city notified the foreclosure purchaser that, pursuant to General Statutes § 12-157,[4] it would exercise its authority to have the property sold for unpaid taxes.[5] Thereafter, the landowner acquired the property as a successor to the purchaser at the foreclosure sale.

At the outset of the trial, each party filed a motion for summary judgment. The landowner argued that, as a successor in interest to the FDIC's mortgage rights,

---

[3] The plaintiff challenged only the validity of the tax liens. It has not contested its liability for the underlying taxes themselves.

[4] General Statutes § 12-157 (a) provides in relevant part: "When a collector levies one or more tax warrants on real estate, he shall prepare notices thereof, containing the name of the taxpayer, a legal description of the real property . . . upon which taxes are due, the amount of the tax or taxes due . . . and the time and place of sale. The collector shall . . . [inter alia, send a copy of the notice] by certified mail, return receipt requested, to the taxpayer and each mortgage, lienholder and other record encumbrancer of record whose interest will be affected by the sale. . . ."

[5] The property was removed from the tax sale list on or about June 7, 1999. The removal was prompted by the landowner's plan to initiate the present declaratory judgment action.

it was entitled to the benefit of the immunity from municipal tax lien foreclosure that federal law has conferred on the FDIC, pursuant to 12 U.S.C. § 1825 (b). In light of that immunity, the landowner argued that no tax lien could attach to its property. The city argued that the landowner was being taxed as fee holder and not as mortgagee, and therefore could not avail itself of the federal statute. The court denied the landowner's summary judgment motion, granted the city's motion and rendered judgment accordingly. The landowner has appealed.

As it did at trial, the landowner maintains that the uncontested facts of record demonstrate its immunity from municipal tax liens, pursuant to 12 U.S.C. § 1825, for the taxes accrued during the FDIC receivership.[6] Its argument focuses on subsection (b) (2), which provides that "[n]o property of the Corporation[7] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation." See footnote 1. Because it purchased the property as a result of the FDIC's foreclosure of its security interest, the landowner claims that it has become the assignee of the FDIC's tax immunity.

Whether the court properly applied the provisions of 12 U.S.C. § 1825 (b) "involves statutory interpretation, which is a question of law. Therefore, our review of this issue is plenary." *Turner* v. *Frowein*, 253 Conn. 312, 337, 752 A.2d 955 (2000); *Babcock* v. *Bridgeport Hospital*, 251 Conn. 790, 819, 742 A.2d 322 (1999).

The proper construction of 12 U.S.C. § 1825 (b) raises a question of great difficulty and great significance. We

---

[6] Although several other issues were raised at trial, they are not a part of the present appeal. For present purposes, therefore, the plaintiff, as a successor to the FDIC's interest in the property, may claim the benefit of the rights of the FDIC under 12 U.S.C. § 1825 (b).

[7] In referencing "the Corporation," the statute is referring to the FDIC.

have no reason to doubt the assertion of the FDIC, in its amicus curiae brief, that delinquent property taxes are a common feature of many FDIC receiverships of failed banking institutions. No claim has been made that the property tax in Connecticut specifically extends to cover mortgage interests. Principally for these reasons, we agree with the trial court's construction of the statute.

## THE JURISDICTIONAL ISSUE

In the parties' presentation of their case, at trial and before this court, they overlooked the special notice requirement that has long been a condition to the authority of a judge to render a declaratory judgment. Pursuant to Practice Book § 17-56 (b), a "party seeking [a] declaratory judgment shall append to its complaint . . . a certificate stating that all . . . interested persons have been joined as parties to the action or have been given reasonable notice thereof. . . ." The landowner filed no such certificate of notice. In the absence of the requisite notice, pursuant to Practice Book § 10-39 (a) (3),[8] the city could have filed a motion to strike the complaint, but did not do so.[9] Practice Book § 10-39, in its present form, was not, however, part of the Practice Book at the time that the landowner filed its complaint and the defendant filed its answer. The new section became effective before the trial court rendered its judgment.

Our Supreme Court repeatedly has held that failure to give the notice required by Practice Book § 17-56 (b)

---

[8] Practice Book § 10-39 (a) provides in relevant part: "Whenever any party wishes to contest [inter alia] . . . (3) the legal sufficiency of any such complaint, counterclaim or cross complaint, or any count thereof, because of the absence of any necessary party or, pursuant to Section 17-56 (b), the failure to join or give notice to any interested person . . . that party may do so by filing a motion to strike the contested pleading or part thereof."

[9] When this procedural defect came to light, this court afforded the parties an opportunity to respond, and they have done so.

"deprives the trial court of subject matter jurisdiction to render a declaratory judgment." *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 225, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997); *Mannweiler* v. *LaFlamme*, 232 Conn. 27, 34–35, 653 A.2d 168 (1995). These cases hold that the absence of notice cannot be cured retrospectively on appeal. *Serrani* v. *Board of Ethics*, 225 Conn. 305, 309, 622 A.2d 1009 (1993); see *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540, 489 A.2d 363 (1985). Noncompliance with the notice requirement can, however, be cured prospectively, upon remand, by providing the necessary notice before a new judgment is rendered. *Connecticut Ins. Guaranty Assn.* v. *Raymark Corp.*, 215 Conn. 224, 230, 575 A.2d 693 (1990).

The question before us is whether recent amendments to the relevant rules of practice, effective January 1, 2000, have modified these guiding principles. If they have not, we must remand the case to the trial court for the filing of the requisite notice certificate and the rendering of a valid judgment thereafter. An appeal could then be taken on the basis of the corrected record. Id. Under the new Practice Book § 17-56 (c), however, although notice to all interested parties is still required, "[t]he exclusive remedy for . . . failure to give notice to interested persons is by motion to strike as provided in Sections 10-39 and 10-44."[10] It is plausible that the amended sections were enacted to avoid having a case bounce back and forth between courts for no articulable reason of policy. Indeed, in a case like this one, in which

---

[10] Practice Book § 10-44 provides: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

the facts are undisputed, a remand is a particularly dysfunctional exercise in futility.

The city urges us not to apply the new Practice Book § 17-56 because it was not yet effective at the time when the landowner filed its complaint and the city filed its answer. It follows, according to the city, that the city lacked the opportunity to strike the landowner's complaint. For two reasons, we disagree.

First, although Practice Book § 10-39 (a) (3) did not become effective until January 1, 2000, the new formulation did not create new law. With respect to the availability of a motion to strike, the section only made explicit what formerly had been implicit. Although a claim of lack of jurisdiction normally is raised by filing a motion to dismiss, it also may be raised in a subsequent motion to strike. *Westbrook* v. *Savin Rock Condominium Assn.*, 50 Conn. App. 236, 239, 717 A.2d 789 (1998).

Second, our Supreme Court's jurisprudence has construed the rules of practice to permit the mandatory certificate of notice to be filed at any time before a judgment is rendered at trial. *Connecticut Ins. Guaranty Assn.* v. *Raymark Corp.*, supra, 215 Conn. 230. The defendant, therefore, was not precluded from raising the issue subsequent to the filing of its answer.

In sum, this appeal is not defective jurisdictionally. This is not a case in which the underlying procedural issue casts a shadow over an issue of subject matter jurisdiction. In view of the general rule that procedural defects may be waived, as now clarified in the provisions of Practice Book § 17-56 (c) and the sections to which it refers, the city's failure to challenge the absence of notice at trial allows us to proceed to the merits.[11]

---

[11] For a discussion of the distinction between subject matter jurisdiction and personal jurisdiction in another context, see *Amodio* v. *Amodio*, 247 Conn. 724, 724 A.2d 1084 (1999); *Rosenfield* v. *Rosenfield*, 61 Conn. App. 112, 762 A.2d 511 (2000).

## THE VALIDITY OF THE TAX LIENS

The validity of the city's tax liens for delinquent real property taxes turns on the proper construction of 12 U.S.C. § 1825 (b). In relevant part, 12 U.S.C. § 1825 (b) (2) provides that "[n]o property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation." In determining the applicability of that provision here, we must also take into account the policy implications to be drawn from 12 U.S.C. § 1825 (b) (1), which states that "any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . ." Neither party has argued that § 1825 (b) is ambiguous.[12]

The landowner's claim to successor tax immunity for the period of the FDIC receivership cannot rise above the immunity that the FDIC itself then had. That immunity is conferred with respect to property in which the FDIC had an interest. Federal law permits a federal agency that has been appointed receiver to acquire a property interest in the form of a fee interest or in the form of a security interest. *New Brunswick* v. *United States*, 276 U.S. 547, 555, 48 S. Ct. 371, 72 L. Ed. 693 (1928).

In this case, the FDIC's property interest was that of a mortgagee rather than that of a fee holder. The question before us is whether the protection that federal law affords to the FDIC as a mortgagee extends to the underlying property interest of a different entity, the private owner and mortgagor of the underlying fee.[13] On this

---

[12] The court's ruling to that effect has not been challenged on appeal.

[13] It is undisputed that the city has sought to impose a tax lien only on the property of the plaintiff fee holder and not on the property of the FDIC as mortgagee. It is similarly undisputed that the city has conceded that, even if it has the right to attach a tax lien to the underlying property, it

question, guiding law is sparse and divided. Two federal district courts and one state appellate court have granted tax lien immunity, while two other federal district courts[14] and a state trial court have ruled to the contrary.

The principal case granting immunity from local tax liens is *Old Bridge Owners Cooperative Corp.* v. *Old Bridge*, 914 F. Sup. 1059 (D.N.J. 1996). That case contains no discussion of the relationship between taxation of the mortgagor's fee interest and the FDIC's interest as mortgagee. Its holding was applied in *PLM Tax Certificate Program* v. *Denton Investments, Inc.*, 195 Ariz. 210, 986 P.2d 243 (App. 1999),[15] in a decision largely based on a determination that *Old Bridge*, although not a decision of the United States Supreme Court, was binding precedent on the Arizona court. Id., 212–13. Recently, another federal district court in New Jersey agreed with *Old Bridge*. *Pacific Northwest Capital, Inc.* v. *First Union National Bank*, United States District Court, Docket No. 00-2334 (D.N.J. January 10, 2001).

The principal case upholding the validity of local tax liens is *Casino Reinvestment Development Authority* v. *Cohen*, 321 N.J. Super. 297, 728 A.2d 868 (1998). In that case, the court held that the FDIC, as mortgagee, could not claim an ownership interest in the underlying property. Id., 302. In the absence of an FDIC ownership interest, it was proper for a city to attach a tax lien to the underlying property. Id., 307. Two federal district courts came to the same conclusion. In *RTC Commer-*

could not foreclose that lien as long as the FDIC had a security interest in the property.

[14] It is noteworthy that *RTC Commercial Assets Trust* v. *Phoenix Bond & Indemnity Co.*, 963 F. Sup. 706 (N.D. Ill. 1997), aff'd, 169 F.3d 448 (7th Cir. 1999), was a federal district court decision affirmed by the circuit court of appeals.

[15] This case also does not discuss the relationship between taxation of the mortgagor's fee interest and the FDIC's interest as mortgagee.

*cial Assets Trust* v. *Phoenix Bond & Indemnity Co.*, 963 F. Sup. 706 (N.D. Ill. 1997), aff'd, 169 F.3d 448 (7th Cir. 1999), the court observed that the lien attachment preclusion contained in § 1825 (b) (2) did not apply to a case in which the federal agency's property interest did not include a fee interest in the underlying real property. Id., 712 n.2. In *Atlantic National Trust, LLC* v. *ECK Associates,* United States District Court, Docket No. 00-1087 (D.N.J. January 10, 2001), the court criticized the logic of the *Old Bridge* decision and declined to follow it even though both cases had been heard in the same federal district court.

Although the conflict in the existing precedents presents us with a close question, we conclude that the reasoning of *Casino Reinvestment Development Authority* v. *Cohen,* supra, 321 N.J. Super. 297, is the more persuasive. We adopt its reasoning that FDIC immunity from the attachment of involuntary tax liens does not extend beyond the FDIC's own property as a mortgagee. The long-standing common-law distinction between a mortgage interest and a fee interest is well established. As a matter of statutory construction, we generally decline to assume that, sub silentio, a statute negates a common-law principle. *Elliot* v. *Sears, Roebuck & Co.,* 229 Conn. 500, 515, 642 A.2d 709 (1994). Perhaps a statute expressly could encompass mortgage interests within the reach of local property taxes, but no argument has been made in this case that any relevant statute so provides.

To the extent that local property law is relevant,[16] it supports our conclusion. Connecticut case law distin-

---

[16] *Casino Reinvestment Development Authority,* and its progeny, refer to state law that does not ordinarily include mortgages within the property to which a property tax lien attached. Neither party in this case has suggested that the city's real property tax has a broader base. In this case specifically, the city had not claimed the right to levy a property tax on the mortgage interest formerly held by the FDIC.

guishes between the rights of a mortgagee and that of the owner of the underlying property. The "mortgagee has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded . . . ." (Internal quotation marks omitted.) *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 569, 620 A.2d 118 (1993).

It has become a truism that property is a bundle of rights. See B. Cardozo, The Paradoxes of Legal Science (1928), p. 129. Unbundling these rights in this case, we are not persuaded to extend a statutory prohibition against the attachment of city tax liens on property *owned* by the FDIC to property that the FDIC *does not own*. Our state property law, to the extent relevant, is therefore entirely compatible with the holding of *Casino Reinvestment Development Authority.*

In its reply brief,[17] the landowner proffers two new arguments for reversal of the judgment of the court. Apart from the procedural impropriety of raising new arguments at a time in the proceedings that does not allow an opportunity for the opposing party to respond in writing, the arguments, on their merits, are not compelling.

First, the landowner claims that the court's interpretation of the statute is improper because the FDIC's property interest as mortgagee would be impaired by foreclosure of the city's tax lien. That argument is irrelevant in this case, in which the city has not pursued a right to foreclosure without the consent of the FDIC. The city's emphasis on a right of attachment of its tax lien, even in the absence of immediate foreclosure,

---

[17] We disfavor arguments first presented in a reply brief because they impair the opposing party's opportunity to reply in writing. We recognize, however, that the plaintiff had no earlier opportunity to respond to issues raised in briefs filed by amici curiae.

appropriately reflects its view that there is a need to finalize its tax liens now in order to facilitate collection of unpaid taxes later.

Second, the landowner claims that, even if all that is at stake is an attachment of property owned by someone other than the FDIC, the existence of tax liens would impair the FDIC's security interest because a potential purchaser at an FDIC liquidation sale would devalue property that was subject to such liens. Although the landowner's contention is factually plausible, we know no more than that. Certainly, no such issue was presented in the motions for summary judgment. Further, although 12 U.S.C. § 1825 (b) protects an FDIC property interest from forced involuntary liquidation through foreclosure, it does not, as far as we have been informed, purport to guarantee that the value of the property will not diminish during the FDIC receivership.

Moreover, with respect to the landowner's concern for the best interests of the FDIC, we are reassured by the FDIC's own statements expressing a different policy. In the present case, in its brief as amicus curiae, the FDIC, agreeing with the city, construes the phrase "property of the Corporation" in 12 U.S.C. § 1825 (b) as confined to the FDIC's property interest as mortgagee. In its view, the FDIC's property interest as mortgagee does not prevent the city's tax liens from attaching to real estate at 17 Huntington Street because it is not property of the FDIC.

The FDIC's position is not an ad hoc construction of 12 U.S.C. § 1825 (b) for this case only, but represents a long-standing policy position. The FDIC, which assisted in the drafting of 12 U.S.C. § 1825 (b), has consistently construed the statute to permit tax liens to attach to real property in which the FDIC holds only a mortgage interest. In its policy statement, the FDIC

states "[b]ecause the involuntary lien for delinquent real property taxes attaches to the property itself, non-consensual liens purporting to attach to property owned in fee by the FDIC are considered void, but liens *may attach* to property in which the FDIC holds only a mortgage interest as security for a loan." Federal Deposit Insurance Corporation, Statement of Policy Regarding the Payment of State and Local Property Taxes, 61 Fed. Reg. 65,056 (December 10, 1996). It has advocated such a policy in court cases such as *Simon* v. *Cebrick*, 53 F.3d 17, 19 (3d Cir. 1995). It has articulated and published its policy statement that "a lien for taxes and interest may attach to property in which the Corporation has a lien or security interest, but the Corporation will not permit a lien or security interest held by it to be eliminated by foreclosure without the Corporation's consent."[18] Federal Deposit Insurance Corporation, Statement of Policy Regarding the Payment of State and Local Property Taxes, supra, 61 Fed. Reg. 65,058.

In sum, we conclude that immunity conferred by the phrase "property of the Corporation" in 12 U.S.C. § 1825 (b) refers only to the particular property interest that the FDIC has acquired. An FDIC security interest in the form of a mortgage is a property interest that does not, per se, encompass a fee interest in the underlying property. Connecticut common law and tax law maintain a distinction between these various property interests. Federal law does not manifest any clear interest to unambiguously overturn these distinctions. Furthermore, in our construction and application of 12 U.S.C.

---

[18] We recognize that one federal appellate court has found fault with the FDIC policy statement in the context of an analysis of 12 U.S.C. § 1825 (b) (3). *Irving Independent School District* v. *Packard Properties*, 970 F.2d 58, 61–63 (5th Cir. 1992). The case is distinguishable because that section is not before us in this litigation. Further, its holding is inconsistent with that of *Simon* v. *Cebrick*, supra, 53 F.3d 17. We therefore decline to follow it.

§ 1825 (b), we assign great weight to the FDIC's own interpretation of a statute that it helped to draft.[19]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[19] In its brief as amicus curiae, the FDIC states the following: "The trial court correctly interpreted Section 1825 (b) (2). By its terms, the statute only prohibits tax liens from attaching to 'property of the' FDIC. It is undisputed that the only 'property of the' FDIC involved in this case is a mortgage lien on the real estate at 37 Huntington Street. The City's tax liens did not attach to the FDIC's mortgage lien, however. Rather, the tax liens attached *to the real estate,* which is *not* property of the FDIC. That being the case, nothing in Section 1825 (b) (2)'s plain language prevents the tax liens from attaching to the real property."