## AVALONBAY COMMUNITIES, INC. *v.* PLAN AND ZONING COMMISSION OF THE TOWN OF ORANGE
### (SC 16619)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued January 16—officially released May 21, 2002

*Timothy P. Pothin*, with whom, on the brief, was *Hugh F. Keefe*, for the appellant (defendant).

*Joseph P. Williams*, with whom, on the brief, was *Timothy S. Hollister*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, C. J. This appeal arises out of contempt proceedings brought by the plaintiff, AvalonBay Communities, Inc., against the defendant, the plan and zoning commission of the town of Orange, for its failure to comply with an order of the trial court to impose only reasonable and necessary conditions on the approval of the plaintiff's affordable housing application. The issue to be resolved on appeal is whether, in those contempt proceedings, the trial court had continuing jurisdiction to order the defendant to modify or to rescind certain conditions the defendant had imposed when: (1) the court found that the defendant was not in contempt; and (2) the four month period prescribed by General

Statutes § 52-212a[1] for opening or setting aside a judgment had lapsed.

This court previously has had occasion to take note of the proceedings underlying this appeal. In *Avalon Bay Communities, Inc.* v. *Orange*, 256 Conn. 557, 560–61, 775 A.2d 284 (2001), in which we considered a related claim, we noted that "[i]n May, 1997, [the parties] entered into a contract whereby [the plaintiff] was to purchase a parcel of real property located in the town [of Orange] . . . comprised of approximately 9.6 acres of land. . . . Subsequently, in August, 1997, [the plaintiff] filed applications for a wetlands permit and a special use permit, accompanied by a site plan, seeking approval to build on the parcel a luxury apartment complex, a percentage of which would qualify as affordable housing rental units. The town inland wetlands and watercourses commission denied [the plaintiff's] original and revised wetlands permit applications. The [defendant] denied [the plaintiff's] site plan and special use permit application, as well as its subsequent, modified application." "[The plaintiff] appealed from the decision of the [defendant] to the Superior Court. The trial court, *Munro, J.*, sustained [the plaintiff's] appeal under [General Statutes] § 8-30g[2] and ordered

---

[1] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

[2] General Statutes § 8-30g provides in relevant part: "(f) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units in a set-aside development, may appeal such decision pursuant to the procedures of this section. Such appeal shall be filed within the time period for filing appeals as set forth in section 8-8, 8-9, 8-28, 8-30 or 8-30a, as applicable, and shall be made returnable to the superior court for the judicial district where the real property which is the subject of the application is located. Affordable housing appeals, including pretrial motions, shall be heard by a judge assigned by the Chief Court Administrator to hear such appeals. To the extent practicable, efforts shall be made to assign such

that the [defendant] approve the modified application for a special permit and site plan pending any reasonable and necessary conditions imposed by [the defendant]." Id., 561 n.5. Specifically, on August 12, 1999, the court ordered that "the applications pertinent to the modified proposal be granted, conditioned upon [the plaintiff's] continued compliance with the affordable housing statutory mandates; further, the [defendant] may, as a requirement of approval, impose reasonable and necessary conditions, not inconsistent with this decision, for snow removal, traffic controls and local road improvements."

cases to a small number of judges, sitting in geographically diverse parts of the state, so that a consistent body of expertise can be developed. Unless otherwise ordered by the Chief Court Administrator, such appeals, including pretrial motions, shall be heard by such assigned judges in the judicial district in which such judge is sitting. Appeals taken pursuant to this subsection shall be privileged cases to be heard by the court as soon after the return day as is practicable. Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said section 8-8, 8-9, 8-28, 8-30 or 8-30a, as applicable.

"(g) Upon an appeal taken under subsection (f) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based upon the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development, or (2) (A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses, and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it. . . ." At the time the plaintiff filed the appeal, subsections (f) and (g) were designated subsections (b) and (c) of General Statutes (Rev. to 1997) § 8-30g. The references and citations in this opinion to § 8-30g are to that statute as revised to 2001.

The record in this case also reveals that, on March 7, 2000, the defendant adopted sixteen conditions for the approval of the plaintiff's application. On April 28, 2000, the plaintiff filed this motion for contempt, claiming that several of the conditions were not reasonable, necessary or consistent with the court's prior order.[3]

---

[3] Specifically, the plaintiff challenged the following conditions: " '2. Prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall make the following improvements to Prindle Hill Road and Indian River Road, such improvements to be in accordance with the requirements of the Town Engineer and Police Chief:

"a. Widen Indian River Road to create a fourteen foot right turn lane from Indian River Road onto Prindle Hill Road.

"b. To the extent of available right-of-way as determined by the town engineer, the applicant shall widen Prindle Hill Road onto Indian River Road.

"c. Reconstruct Prindle Hill Road to a uniform forty-one foot width (fifteen feet northwest bound and twenty-six feet southeast bound) from the proposed beginning of the deceleration lane northwesterly of the northwesterly curbcut of Prindle Hill Road to the point of commencement of the remerger of the proposed acceleration lane toward the southeasterly corner of the property.

\* \* \*

"5. Prior to the issuance of a Certificate of Approval of Special permit and/or Building Permit, the Applicant shall grant to the Town a permanent and unconditional easement for all highway purposes including snow shelf over that portion of the property on which road improvements to Prindle Hill Road are to be located which are not within the present public right of way and over an additional ten feet from the edge of proposed pavement.

\* \* \*

"8. Prior to the issuance of a Certificate of Approval of Special Permit and/or Building Permit, the Applicant shall submit to the Zoning Enforcement Officer notice of approval of the Inland Wetlands and Watercourse Commission for the filling of wetlands necessary for the required improvements to Prindle Hill Road.

"9. Prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall install a traffic signal at the intersection of Edison Road and Prindle Hill Road in accordance with the requirements of the town engineer and police chief.

"10. Prior to the issuance of a Certificate of Approval of Special Permit and/or Building Permit, the Applicant is required to deposit with the Town a sum as determined by the town engineer which is a percentage of the estimated cost for the extension of Edison Road from its existing terminus to Marsh Hill Road equal to one-half of the fraction, the numerator of which is the Applicant's frontage on Edison Road and the denominator of which is the total length of Edison Road as extended to be part of a sinking fund

It further claimed that: (1) certain conditions were impossible to perform or would require the discretionary approval of another agency; (2) one of the conditions—widening Prindle Hill Road along the entire AvalonBay frontage—would create a traffic hazard; (3) several of the conditions were patently inconsistent with conditions imposed on another development on the same street; and (4) the defendant did not even attempt to meet its burden of proving, pursuant to § 8-30g (g),[4] that the conditions met the requirements of that statute or that the conveyance of easements and fee interests to the town did not violate the takings clause of the fifth amendment. The plaintiff requested that the court hold the defendant in civil contempt and that it order the defendant to rescind the conditions.

The trial court held a hearing on the motion for contempt on August 29 and 30, 2000, and September 18, 2000, at which it took testimony and heard arguments. On December 6, 2000, the trial court issued its memorandum of decision, in which it concluded that: condition 2b pertaining to road reconstruction was void because it was impossible to perform; condition 5 requiring an unconditional easement was unreasonably broad in that the easement was required only for snow shelf purposes; condition 2c pertaining to the widening of Prindle Hill Road and condition 8 pertaining to wetlands approval were void as being unreasonable

---

to be used toward the cost of the extension of Edison Road from its current terminus to [M]arsh Hill Road. Said funds shall be deposited pursuant to an agreement between the Town and the Applicant, acceptable to the Town Attorney, which shall provide that if construction had not been commenced within (7) years of the date of this approval that the funds allocated to the improvement not commenced shall be returned to the Applicant.

"11. Prior to the issuance of a Certificate of Zoning Compliance, the Applicant shall resignalize the traffic light at the intersection of Prindle Hill Road and Indian River Road in accordance with the requirements of the Town Engineer and Police Chief.'"

[4] See footnote 2 of this opinion for the text of § 8-30g (g).

because they required the plaintiff to obtain additional approvals from the wetlands commission, which approvals were unlikely; condition 9 pertaining to installation of a traffic signal was void as being both unnecessary and unreasonable because it required the approval of the town traffic authority, which was unlikely; and condition 10 pertaining to the establishment of a fund for the extension of Edison Road was void as being unnecessary for the project and because there was no basis for ascertaining the reasonableness of the funding formula.

Accordingly, the court ordered the defendant to modify condition 5 to provide that the easement was for snow shelf purposes only, and to rescind conditions 2b, 2c, 8, 9 and 10. The court also ruled that the plaintiff had failed to establish its claim of civil contempt by a preponderance of the evidence because it had not proved that the defendant intentionally had violated the court's order. The defendant appealed from the trial court's judgment to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendant claims on appeal that, in the absence of a finding of contempt, the trial court lacked continuing jurisdiction to order the defendant to alter the conditions of approval after the passage of the four month period prescribed by § 52-212a for opening or setting aside a judgment.[5] Subsumed within this claim is the defendant's assertion that, in the absence of a contempt finding, the plaintiff should have been required to bring a statutory appeal pursuant to either General Statutes

---

[5] The defendant also claims that the order that the conditions be reasonable and necessary was not mandatory. This claim is easily disposed of. Although the defendant was not required to impose any conditions on its approval of the plaintiff's application, if it chose to impose conditions, the conditions were required to be reasonable and necessary.

§ 8-8[6] or § 8-30g. The defendant also claims that the trial court's order permitting the defendant to impose reasonable and necessary conditions on its approval lacked sufficient clarity to be enforced in contempt proceedings, and that the trial court's order to the defendant to rescind and modify the conditions was, in effect, a modification of its prior order and, therefore, barred by § 52-212a. We conclude that the trial court had continuing jurisdiction "to fashion a remedy appropriate to the vindication of a prior . . . judgment"; *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* 191 Conn. 555, 563, 468 A.2d 1230 (1983); pursuant to its inherent powers and that the time limitations imposed by § 52-212a do not apply to the exercise of that jurisdiction. We also conclude that the exercise of that authority in this case was not barred by the availability of other appellate remedies. Finally, we conclude that the court's order to the defendant to modify and rescind the conditions of approval was an effectuation, not a modification, of its prior judgment and was, therefore, within its continuing jurisdiction.

We note preliminarily that the parties disagree as to the appropriate standard of review with respect to all of the defendant's claims. The defendant contends that the question of whether the trial court had the power to issue the order challenged in this case is a pure question of law and that our review is, therefore, plenary. The plaintiff asserts, to the contrary, that our review is limited to whether the trial court abused its discretion in issuing the order. We agree with the defendant. Whether the trial court had the power to issue the order, as distinct from the question of whether the trial court properly exercised that power, is a question involving the scope of the trial court's inherent powers

---

[6] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

and, as such, is a question of law. See, e.g., *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 14, 776 A.2d 1115 (2001) (concluding as matter of law that trial court had inherent power to dismiss case for plaintiff's failure to comply with discovery orders and concluding that trial court abused discretion in dismissing case). Accordingly, our review is plenary.

I

We begin our analysis by addressing the defendant's argument that continuing jurisdiction to enter postjudgment orders after expiration of the four months prescribed by § 52-212a must derive from some source independent of the court's inherent powers, such as a statute,[7] an order of injunctive relief,[8] or the agreement of the parties,[9] and is separate and distinct from the court's equitable authority to vindicate judgments, which, in turn, arises only when the court has made a finding of contempt. Because there was no such independent basis for continuing jurisdiction in this case, the defendant argues, the trial court lacked authority to order it to modify the conditions of approval.

[7] Specifically, the defendant argues that General Statutes § 46b-87 provides for the family court's continuing jurisdiction over judgments pertaining to the distribution of property pursuant to General Statutes § 46b-81. General Statutes § 46b-87 provides: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt, provided if any such person is found not to be in contempt of such order, the court may award a reasonable attorney's fee to such person. The costs of commitment of any person imprisoned for contempt of court by reason of failure to comply with such an order shall be paid by the state as in criminal cases."

[8] See *Adams* v. *Vaill*, 158 Conn. 478, 482, 262 A.2d 169 (1969) ("courts have inherent power to change or modify their own injunctions where circumstances or pertinent law have so changed as to make it equitable to do so").

[9] See *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, supra, 191 Conn. 563.

We reject this hypertechnical understanding of the trial court's continuing jurisdiction to effectuate prior judgments. We conclude, instead, that the trial court's continuing jurisdiction is not separate from, but, rather, *derives* from, its equitable authority to vindicate judgments.[10] Moreover, we hold that such equitable authority does not derive from the trial court's contempt power, but, rather, from its inherent powers. See *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, supra, 191 Conn. 563 (recognizing "trial court's power to fashion a remedy appropriate to the vindication of a prior consent judgment"); *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737, 444 A.2d 196 (1982) (recognizing "the inherent power of the court to coerce compliance with its orders"). Although the trial court found the noncompliant party to be in contempt in both *Connecticut Pharmaceutical Assn., Inc.*, and *Papa*, nothing in those cases suggests that the court's authority "to fashion a remedy appropriate to the vindication of a prior consent judgment" *derived* from the finding of contempt. *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, supra, 563. Rather, the language in *Papa* suggests the converse: that the contempt power arises from the court's inherent power to vindicate prior judgments. See *Papa* v. *New Haven Federation of Teachers*, supra, 737 ("[t]he penalties which may be imposed [in a contempt proceeding] . . . arise from the inherent power of the court to coerce compliance with its orders"). We note that, in this case, although the court determined that the defendant had not complied with its order to impose only reasonable and necessary conditions, it did not find the defendant in contempt because it concluded that the noncompliance was not wilful. It would defy common sense to conclude that, merely because a party's violation of a court order was

---

[10] As the defendant correctly points out, continuing jurisdiction may have other sources as well, including statute and the agreement of the parties.

not wilful, the trial court is deprived of its authority to enforce the order.[11]

[11] Our determination that the trial court has the inherent power to effectuate prior judgments renders it unnecessary to address the defendant's claims pertaining to the effect of injunctive orders and the agreement of the parties on the scope of the trial court's continuing jurisdiction. Nevertheless, we note that, although we have recognized that courts have inherent power to *change or modify* their own injunctions that is not limited by § 52-212a; see *Adams* v. *Vaill*, 158 Conn. 478, 482, 262 A.2d 169 (1969); which power does not apply to noninjunctive orders, we never have suggested that the power to *effectuate* prior judgments is restricted to injunctive orders. We also note that we have difficulty reconciling the defendant's various arguments as they relate to this claim. On the one hand, the defendant concedes that, if the trial court had found the defendant's conduct to be wilful and, therefore, contemptuous, it would have had the equitable authority to order the defendant to modify and rescind the conditions of approval. See *Connolly* v. *Connolly*, 191 Conn. 468, 483, 464 A.2d 837 (1983) (to find contempt, court must find "wilful disobedience of a court order"). Thus, the defendant implicitly concedes that the order was sufficiently clear and unambiguous to support a finding of contempt. See *Sablosky* v. *Sablosky*, 258 Conn. 713, 718, 784 A.2d 890 (2001) (whether ambiguity in order will preclude finding of contempt is within discretion of trial court); *Eldridge* v. *Eldridge*, 244 Conn. 523, 529, 710 A.2d 757 (1998) (contempt " 'may be founded solely upon some clear and express direction of the court' "). On the other hand, the defendant disputes "that the trial court's order permitting 'reasonable and necessary conditions' was sufficiently clear and definite that it should be regarded as an injunction conferring continuing jurisdiction on the trial court." If the order was sufficiently clear and unambiguous to support a finding of contempt, however, it is difficult to understand the defendant's contention that it was not sufficiently clear and unambiguous to constitute an enforceable injunction.

Furthermore, with respect to the defendant's argument that the trial court's order was not injunctive because it was not clear and unambiguous, we note that those factors affect only the enforceability of an injunctive order, not its inherent nature. Compare *Adams* v. *Vaill*, supra, 158 Conn. 485–86 ("the [injunctive] decree should be sufficiently clear and definite in its terms for the defendant to be able to determine with reasonable certainty what conduct on his part is required or prohibited") with *Southington* v. *Pierce*, 29 Conn. App. 716, 717 n.1, 617 A.2d 929 (1992) ("Corpus Juris Secundum defines an injunction as 'a writ framed according to the circumstances of the case commanding an act which the court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience' "). An unclear order may, nevertheless, be injunctive. It is irrelevant in this case whether the trial court's original order was injunctive, however, because we conclude that the trial court had continuing jurisdiction to effectuate its original judgment whether or not it was injunctive.

Moreover, we note that the Appellate Court repeatedly has held that "even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." *Nelson* v. *Nelson*, 13 Conn. App. 355, 367, 536 A.2d 985 (1988); *Clement* v. *Clement*, 34 Conn. App. 641, 647, 643 A.2d 874 (1994). Contrary to the defendant's argument, nothing in those cases suggests that the trial court's continuing jurisdiction to enter postjudgment orders in the absence of a finding of contempt derives from any source other than its inherent powers. With respect to the defendant's claim that the continuing jurisdiction in *Nelson* and *Clement* was statutorily conferred, we note that *Clement* involved a dispute over a property assignment following a marital dissolution and that General Statutes § 46b-86 specifically provides that the trial court does *not* have continuing jurisdiction to set aside, alter or modify property assignments. See General Statutes § 46b-86 (a) (providing in relevant part that that statute's provision that order for payment of alimony or support may at any time be continued, set aside, altered or modified by court "shall not apply to [property] assignments under section 46b-81"). We also reject the defendant's claim that General Statutes § 46b-87 provides for the court's continuing jurisdiction over cases involving family matters. That statute merely recognizes the court's common-law contempt power and provides that the court may award attorney's fees to either party in contempt proceedings related to orders issued under the specified statutes. Moreover, nothing in either *Nelson* or *Clement* suggests that the trial court's continuing jurisdiction in those cases derived from the special nature of marital dissolution cases. Rather, the Appellate Court in *Clement* specifically stated that, pursuant to § 52-212a, the trial court "[had] no jurisdiction to open a judgment and affect the prop-

erty assignment except within four months after the original judgment"; *Clement* v. *Clement,* supra, 644–45; but that "it [was] within the equitable powers of the trial court" to effectuate its prior judgment at any time, regardless of whether the noncompliant party was in contempt. (Internal quotation marks omitted.) Id., 646. Accordingly, the Appellate Court in *Clement* could have concluded only that the trial court's continuing jurisdiction over that matter derived from its equitable authority to vindicate judgments. The defendant concedes that trial courts must have that power in family cases, wherein compliance with the court's decree may take place over the course of years. We can conceive of no reason to bar the exercise of the trial court's equitable authority in cases like the present one, wherein, although compliance with the judgment did not take place over years, it required more time than the four months prescribed by § 52-212a.[12]

Finally, we note that "[m]otions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper. . . . There is no time restriction imposed on the filing of a motion for clarification." (Citation omitted; internal quotation marks omitted.) *Zadravecz* v. *Zadravecz,* 39 Conn. App. 28, 30, 664 A.2d 303 (1995); see also *Sablosky* v. *Sablosky,* 258 Conn. 713, 720, 784 A.2d 890 (2001)

---

[12] The defendant also argues that, in an administrative appeal, where the Superior Court is acting as an appellate tribunal, the court does not have the same inherent powers that it has when acting as a court of original jurisdiction. In *Park City Hospital* v. *Commission on Hospitals & Health Care,* 210 Conn. 697, 701, 556 A.2d 602 (1989), however, this court recognized that in an administrative appeal pursuant to General Statutes § 4-183, the Superior Court had broad equitable powers derived from General Statutes § 52-1, which authorizes the Superior Court to "administer legal and equitable rights and apply legal and equitable remedies in favor of either party in one and the same civil action so that legal and equitable rights of the parties may be enforced and protected in one action. . . ."

("where there is an ambiguous term in a judgment, a party must seek a clarification"); id., 722 ("it is incumbent upon the parties to seek judicial resolution of any ambiguity in the language of judgments"). We recognize that both *Zadravecz* and *Sablosky* involved support orders and that § 46b-86[13] provides an exception to the four month time limitation imposed by § 52-212a for the modification of decrees pertaining to alimony or support. We also recognize that our conclusion in *Sablosky*, that the defendant had an obligation to seek clarification of an ambiguous judgment, was based in part on our conclusion in *Eldridge* v. *Eldridge*, 244 Conn. 523, 532, 710 A.2d 757 (1998), that the defendant in that case was required to seek a modification of a support order pursuant to § 46b-86 rather than resort to self-help by deciding unilaterally to withhold payments.[14] *Sablosky* v. *Sablosky*, supra, 720. Both *Sablosky* and *Zadravecz* refer to judgments generally, however, and not specifically to support orders. See *Sablosky* v. *Sablosky*, supra, 722; *Zadravecz* v. *Zadravecz*, supra, 30 ("[n]or is there a requirement that the same court that rendered the original *judgment* act on the motion for clarification" [emphasis added]). Furthermore, although we concluded in *Sablosky* that the public pol-

[13] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. . . ."

[14] We recognize that the specific issue before this court in *Sablosky* was not whether the trial court had jurisdiction to clarify an ambiguous judgment, but, rather, whether it could find a party in contempt of a judgment if the judgment was ambiguous. Implicit in our conclusion that it could, however, was our recognition that the court had jurisdiction to grant a request for clarification.

icy in favor of encouraging parties to seek judicial resolution of ambiguous judgments rather than resort to self-help was particularly compelling in family cases; *Sablosky* v. *Sablosky*, supra, 720–21; nothing in that case suggests that the same policy is not a consideration in nonfamily cases. We conclude, therefore, that the holding of those cases, that a party may seek clarification of an ambiguous judgment at any time, was not based on § 46b-86 or on any principle specific to cases involving family matters, but, rather, was grounded in the trial court's equitable authority to protect the integrity of its judgments.

Accordingly, we conclude that the trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction.

## II

We next address the defendant's claim that, in the absence of a finding of contempt, the plaintiff was limited to pursuing available appellate remedies under §§ 8-8[15] and 8-30g. We conclude that it was not so limited.

In support of this claim the defendant relies, in part, on this court's decision in *Hartford* v. *Hartford Electric*

[15] It is not clear why the defendant cites § 8-8, which governs appeals from a zoning board of appeals to the Superior Court, rather than General Statutes § 8-7, which governs appeals from municipal land use agencies to the zoning board of appeals. Because we conclude that the plaintiff was not required to bring an appeal, however, it is not necessary to determine which specific statutory provision would have governed an appeal.

*Light Co.*, 172 Conn. 71, 372 A.2d 131 (1976). That case involved the consolidated appeals of two electric utilities in a rate proceeding.[16] In a terse and somewhat elliptical per curiam opinion, this court granted the utilities' motion to expedite the appeals. Id., 72. This court also noted that, although "we [had] clearly stated in a prior opinion that the rates to be charged by the utilities during the pendency of these appeals are a matter for the public utilities control authority (PUCA) to determine . . . our opinions have been misinterpreted to an extent that members of the PUCA and officers of the utilities have been exposed to charges alleging contempt of court, arising from judgments that are on appeal and the validity of which have not yet been passed upon by this court." Id., 73.

We concluded that "where a trial court has found that an administrative agency has made invalid or insufficient findings, such court must remand the matter to the agency for further proceedings. . . . It is not the trial court's function to shepherd and supervise the actions of the administrative agency in implementing the remand. The purpose of judicial review of an administrative order is not to have the court decide the matter de novo, but rather to have the court determine whether the agency's order is properly arrived at and is supported by the record and the evidence. Contempt proceedings are not a proper substitute for the orderly process of appeal from that determination." (Citations omitted.) Id. We did not, however, enter any order staying or vacating the contempt proceedings. Instead, we denied the appellant's request to stay all proceedings in the trial court related to the appeals. Id., 73–74.

---

[16] The precise nature of the appeals is not clear from that opinion or from two other opinions of this court involving the same appeals. See *Hartford* v. *Hartford Electric Light Co.*, 173 Conn. 340, 377 A.2d 1090 (1977); *Hartford* v. *Hartford Electric Light Co.*, 172 Conn. 13, 372 A.2d 130 (1976).

We conclude that *Hartford* v. *Hartford Electric Light Co.*, supra, 172 Conn. 71, does not control this case. The trial court's remand order in that case apparently directed the agency to make additional factual findings and not, as here, to perform a specific action. Moreover, the contempt motion in that case apparently was based on conduct that was not even *colorably* violative of the trial court's order. Accordingly, we do not agree that *Hartford* stands for the general proposition that an appeal, rather than contempt proceedings, is the only permissible procedure for resolving a dispute arising from a remand order in an administrative appeal. At most, that case suggests that contempt proceedings may be inappropriate when the conduct complained of, although colorably illegal, does not violate the underlying judgment, or when that judgment is being challenged on appeal.

The defendant also argues that the trial court's judgment created an incentive for parties in the plaintiff's position to evade the procedural requirements of §§ 8-8 and 8-30g by filing motions for contempt that impose an undue burden on parties and courts.[17] The defendant

---

[17] We note that the plaintiff argues that whether the defendant had violated the judgment was not a proper subject for an appeal pursuant to § 8-8. The plaintiff points out that the matter before the defendant on remand was not an application for a permit, but the trial court's remand order. Accordingly, the question in a zoning appeal would have been, not whether the defendant had abused its statutorily granted discretion to impose conditions on an approval, but whether it had violated the trial court's remand order limiting that discretion. We agree with the plaintiff that it is questionable whether a zoning appeal is the appropriate proceeding in which to litigate the propriety of or claimed noncompliance with a judgment of the trial court in a prior zoning appeal that imposes limits on the discretion of a land use agency. It is particularly questionable whether a zoning board of appeals may entertain such a claim in proceedings pursuant to General Statutes § 8-7. See footnote 15 of this opinion. We need not decide that issue, however, in this case. Even if we assume that the plaintiff could have appealed from the imposition of the conditions, we conclude that the availability of that option would not bar the plaintiff from bringing these contempt proceedings.

concedes, however, that the plaintiff was entitled to bring the contempt proceedings and that, if the trial court had concluded both that the conditions were unreasonable and that the noncompliance was wilful, it would have had the authority to order the defendant to modify and rescind the conditions. We cannot conceive of any reason why the trial court's determination that the noncompliance was not wilful should, from that moment forward, strip it of its authority and require the plaintiff to seek yet another determination that the conditions were unreasonable in proceedings pursuant to § 8-8 or § 8-30g. If the trial court had the power to impose the "reasonable and necessary" requirement in the first instance—which the defendant concedes—it had the power to issue orders to effectuate that requirement in postjudgment proceedings, regardless of what other remedies the plaintiff may have had.

Finally, the defendant contends that, in an appeal brought pursuant to § 8-30g, the plaintiff would have had to plead and prove, as a threshold matter, that the conditions on the approval imposed by the defendant had "a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . ." General Statutes § 8-30g (f). The defendant argues that this condition is analogous to the aggrievement requirement of § 8-8 that establishes the plaintiff's standing to bring an appeal and that, because there was no such requirement in the contempt proceeding, the plaintiff evaded a statutory prerequisite for challenging conditions on affordable housing approvals. We disagree. This contempt proceeding arose *within the context* of a § 8-30g appeal. That appeal resulted in a ruling by the trial court that the defendant had not met its burden of proof pursuant to § 8-30g (g). Accordingly, in an order that was not challenged by the defendant, the trial court remanded the decision to the defendant with direction

to approve the application and to impose only reasonable and necessary conditions on the approval. We can conceive of no reason why the plaintiff should be required to bring a *second* appeal pursuant to § 8-30g to enforce that order. Rather, if the defendant believes that the trial court's order in the contempt proceedings went beyond what is authorized by § 8-30g, it should have challenged the substance of that order.

### III

Having concluded that the trial court's continuing jurisdiction to enter orders in vindication of a prior judgment is grounded in its inherent powers and that the exercise of that jurisdiction in this case was not barred by the availability of appellate remedies, we must now determine whether the trial court's order that the defendant alter the conditions of approval was a modification of the original rescript, in which case it would be barred by § 52-212a, or an effectuation of the rescript, in which case it would be within the court's continuing jurisdiction. See *Clement* v. *Clement*, supra, 34 Conn. App. 645 (recognizing that if motion fairly can be construed as seeking effectuation of judgment rather than modification, then trial court has continuing jurisdiction).

The rescript required that "the applications pertinent to the modified proposal be granted, conditioned upon [the plaintiff's] continued compliance with the affordable housing statutory mandates; further, the [defendant] may, as a requirement of approval, impose reasonable and necessary conditions, not inconsistent with this decision, for snow removal, traffic controls and local road improvements." We recognize that the terms "reasonable and necessary" are not self-defining and may be open to differing rational interpretations. That does not mean, however, that they are so unclear and ambiguous as to be unenforceable. Rather, we con-

clude that, when the parties were unable to agree whether certain conditions met the requirements of the rescript, it was proper for the plaintiff to invoke the trial court's continuing jurisdiction to interpret and effectuate the rescript in postjudgment proceedings.[18] We further conclude that the trial court's order that the conditions it had determined to be unreasonable and unnecessary must be modified or rescinded was an effectuation, not a modification, of that rescript and was, therefore, within the trial court's continuing jurisdiction.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[18] Our rules of practice do not specifically provide a procedure for invoking the continuing jurisdiction of the trial court to clarify or interpret a prior judgment. In *Zadravecz* v. *Zadravecz*, supra, 39 Conn. App. 30, however, the Appellate Court noted that "[m]otions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper." (Internal quotation marks omitted.) See also *Gentile* v. *Ives*, 163 Conn. 281, 282, 303 A.2d 720 (1972) (recognizing that "[w]hile a motion entitled 'Motion for Order in Aid of Judgment' is one unknown to our practice, it is clear that the plaintiffs, in the unusual situation where the state, acting through its highway commissioner, had failed to comply with a judgment of the Superior Court, sought to invoke the general power of the Superior Court to enforce its own judgments," and affirming trial court's granting of motion). In the absence of any formal procedural rules, we can conceive of no reason why the trial court, having concluded that the defendant had not contemptuously violated its order, should be barred from treating the plaintiff's motion for contempt as a request for clarification or interpretation of its prior judgment.