SAMUEL B. FULLER *v.* MARIGRACE R. FULLER
(AC 29601)

Flynn, C. J., and DiPentima and West, Js.

Argued October 13, 2009—officially released February 2, 2010

*George J. Markley*, for the appellant (plaintiff).

*William F. Gallagher*, for the appellee (defendant).

*Opinion*

WEST, J. In this dissolution of marriage action, the plaintiff, Samuel B. Fuller, appeals from the judgment of the trial court in which it determined that by the self-executing terms of the final dissolution decree, and the separation agreement incorporated therein, the court's previous child support order was retroactive to the date alimony payments to the defendant, Marigrace R. Fuller, terminated. First, the plaintiff claims that the court lacked jurisdiction or authority to determine that its previous support order was retroactive by the self-executing terms of the separation agreement. Next, the plaintiff argues that the court improperly concluded that the previous order that modified his child support

payments was automatically retroactive by the self-executing terms of the separation agreement that was incorporated into the judgment of dissolution. Last, the plaintiff claims that the court's determination that the previous child support order was retroactive by the self-executing terms of the separation agreement resulted in a gross injustice to him, and, therefore, principles of equity require this court to reverse that order. We disagree with the plaintiff and conclude that the court acted properly when it determined that by the self-executing terms of the final dissolution decree, its previous child support order was retroactive to the date alimony payments to the defendant terminated. The judgment is affirmed.

The record reveals the following facts and procedural history relevant to the plaintiff's appeal. The plaintiff and the defendant were married on August 26, 1989. Following an irretrievable breakdown of the marriage, the court rendered judgment of dissolution on August 8, 2003. The parties had three minor children as of the date of the dissolution. The judgment of dissolution incorporated by reference the parties' separation agreement, which contained provisions setting forth, among other things, the plaintiff's alimony and child support obligations. Under the terms of the agreement, the parties agreed that the plaintiff would pay unallocated alimony and child support to the defendant in an amount to be determined based on his salary and bonuses.[1] Paragraph 8.1 of article VIII of the agreement provides in relevant part: "Commencing August 1, 2003, the [plaintiff], during his lifetime, and ending no later than May 31, 2011, shall pay to the [defendant] as unallocated alimony and child support . . . an amount equal

[1] At the time the parties entered into the separation agreement, the plaintiff was employed as the executive vice president of development for AvalonBay Communities, Inc., and was earning in excess of $1 million a year in salary and bonuses.

to [45] percent of his first [$350,000] of salary and bonus, and [35] percent of salary and bonus in excess of $350,000 until he has paid a total of [$231,000] from these two sources per year . . . ." From June 1, 2011, through May 31, 2015, the plaintiff was obligated to pay, as alimony, $10,000 per month. Also, paragraph 10.7 of article X of the agreement provides that the plaintiff, or his estate, shall pay to the defendant, as additional alimony, 50 percent of unvested stock grants "if, as, and when they vest," such grants are awarded to the plaintiff before February 2, 2003. The plaintiff's alimony obligation would cease on May 31, 2015, or in the event that he or the defendant died, the defendant remarried or upon her cohabitation pursuant to General Statutes § 46b-86 (b). The agreement also provided that "[t]he alimony portion of the unallocated alimony and support shall be specifically nonmodifiable by the [defendant] as to term, duration and amount."

The plaintiff's employment was terminated effective April 30, 2005. The plaintiff soon after ceased making unallocated alimony and child support payments.[2] On April 22, 2005, the defendant filed with the court a postjudgment motion to fix alimony and child support in response to the plaintiff's anticipated loss of employment and the concomitant curtailment of his unallocated alimony and child support payment obligations under the formula set forth in the separation agreement. The motion stated that the plaintiff had informed the defendant of his pending termination of employment. In a letter dated December 19, 2005, the plaintiff indicated to the defendant that he would be making child support payments in the amount of $2000 per month. By memorandum of decision filed on May 31, 2006, the court granted in part and denied in part the defendant's

[2] The court later determined, and the plaintiff does not dispute, that May 15, 2005, was the effective date of his cessation of unallocated alimony and child support payments that were set forth in the separation agreement.

motion. The court concluded that the separation agreement was comprehensive and resulted from the bargaining of the parties who, at the time of the agreement's execution, were represented adequately by counsel. The court also concluded that the agreement contained an unambiguous preclusion of modification of the alimony formula found in the agreement. The court, however, concluded that the agreement did not preclude the modification of the child support component of the support order. The court ordered the plaintiff to pay the defendant child support in the amount of $3000 per week and stated that the order would remain in full force and effect until he began to earn salary and bonuses as per the formula explicated in the separation agreement for calculating unallocated alimony and child support. The court also reserved its jurisdiction over the issue of alimony.[3]

On September 13, 2006, the court granted the plaintiff's ex parte emergency motion for modification of parenting orders. As a result, the court granted to the plaintiff temporary sole physical custody of the children subject to supervised visitation by the defendant. On October 4, 2006, the plaintiff filed a motion for modification requesting that the court modify its May 31, 2006 order, in which it ordered him pay to the defendant $3000 per week child support. On December 21, 2006, the court ruled on that motion, stating in relevant part that "pursuant to an order entered on September 13, 2006, and served on the defendant on September 12, 2006, the plaintiff has had de facto custody of the minor children on a continuing basis with limited visitation to the [defendant]. The order of support only is suspended retroactive to September 12, 2006. The plaintiff shall be

_____

[3] The plaintiff filed with the court on June 9, 2006, a motion to reargue and on June 16, 2006, a motion to vacate the court's May 30, 2006 order for child support. The court denied both motions on December 21, 2006, by written order.

given credit from September 12, 2006, for any excessive child support payments. In addition, appropriate credit shall be given to either party for any unreimbursed medical or dental expenses according [to] the agreement to equally divide same."

On April 18, 2007, the plaintiff filed with the court a postjudgment motion for contempt. In it, he requested that the court find the defendant in contempt of its December 21, 2006 order and order her to pay him the sum of $45,857.14 to reimburse him for excess child support he had paid to her after September 12, 2006.[4] On June 22, 2007, the defendant filed with the court a postjudgment motion for contempt.[5] In it, she requested that the court find the plaintiff in contempt of its May 31, 2006 order and order him to pay her the sum of $154,000 in child support that remained due under that order.[6] In her motion, the defendant asserted that the plaintiff had failed to pay to her retroactive child support from May 15, 2005—the date on which the plaintiff ceased to pay her unallocated alimony and child support—to May 30, 2006.[7] See footnote 11 of this opinion. Furthermore, she asserted, the retroactive child support that she was seeking in her motion was due her as a result of the self-executing terms of the separation agreement. After hearing oral argument on January 2, 2008, the court, by memorandum of decision filed January 11, 2008, granted the defendant's motion and

[4] The plaintiff also sought $697 for unreimbursed medical expenses for the children and $2341 for expenses he paid for various extracurricular activities for the children for a total of $48,895.14 plus interest and attorney's fees.

[5] On June 22, 2007, the defendant also filed with the court an objection to the plaintiff's April 18, 2007 motion for contempt.

[6] The defendant also sought $3484.16 for unreimbursed medical expenses for the children.

[7] In her motion, the defendant conceded that the plaintiff had paid, in total, for the time period in question, $8000 to satisfy his child support obligation, and she offset by that amount the sum she was seeking from him.

ordered the plaintiff to pay to the defendant a child support arrearage of $154,000. It is from this order that the plaintiff appeals.[8] Further facts will be set forth as necessary.

I

First, the plaintiff claims that pursuant to General Statutes § 52-212a and Practice Book § 17-4[9] the court lacked jurisdiction or authority to determine that its previous support order was retroactive by the self-executing terms of the separation agreement. We disagree.

Initially, we set forth certain legal principles relevant to the plaintiff's appeal. "Despite the existence of various exceptions to § 52-212a, our Supreme Court has stated that this statute 'operates as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it.' *Kim* v. *Magnotta*, 249 Conn. 94, 104, 733 A.2d 809 (1999)." *Perugini* v. *Devino*, 111 Conn. App. 436, 442, 959 A.2d 1031 (2008). The plaintiff, therefore, incorrectly characterizes this claim as jurisdictional. Because, however, the plaintiff also challenges the legal authority of the court to issue the order, his claim raises a question of law that is subject to our plenary review.[10] See *Rosato* v. *Rosato*, 77 Conn. App.

---

[8] The plaintiff asserts in his brief that the court failed to decide his April 18, 2007 motion for contempt in its January 11, 2008 memorandum of decision. The plaintiff also "determined that such failure [was not] an appropriate subject of this appeal and that his remedy [was] to pursue the prosecution of his motion in the Superior Court . . . ." Because the plaintiff has chosen not to address this claim to this court, we express no opinion on the issue.

[9] In 2010, subsection (c) and its subdivisions were added to Practice Book § 17-4. That amendment has no bearing on the merits of this appeal. For purposes of clarity, we refer to the current revision.

[10] We note that "there is a clear distinction between authority (or power) and jurisdiction." *Bender* v. *Bender*, 292 Conn. 696, 711 n.10, 975 A.2d 636 (2009); see also *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 790, 855 A.2d 174 (2004) ("The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. . . . Whereas [s]ubject matter jurisdiction

9, 17, 822 A.2d 974 (2003); see also *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001); *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

The plaintiff argues that the court lacked "authority to order that the [May 31, 2006] support order be made retroactive pursuant to [the defendant's] motion that was . . . filed . . . more than a year after the support order was entered." Essentially, the plaintiff argues that the defendant's motion was filed, argued and ruled upon by the court as a motion to modify the court's May 31, 2006 order. As a result, he contends, the court's inherent power to modify that judgment was restricted by the time limits contained in § 52-212a and Practice Book § 17-4, and, therefore, because the motion was untimely and the time limitation was not waived by the plaintiff, the court was without authority to entertain the motion. The plaintiff's characterization of the defendant's June 22, 2007 motion, the relief sought therein and the court's ruling in its memorandum of decision is misguided.

"[T]he trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction." *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002). We also note that "[m]otions for interpretation or clarification, although

involves the authority of a court to adjudicate the type of controversy presented by the action before it . . . the authority to act refers to the way in which that power [to hear and to determine the controversy] must be exercised in order to comply with the terms of the statute." [Citations omitted; internal quotation marks omitted.]).

not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper. . . . There is no time restriction imposed on the filing of a motion for clarification." (Internal quotation marks omitted.) Id., 244.

The defendant, on June 22, 2007, filed a motion for contempt in which she sought, inter alia, that the court find the plaintiff in contempt for his failure to pay child support for the fifty-four weeks between the date of his "unilateral termination of unallocated support payments, to May 30, 2006,"[11] the date of the court's child support order. In that motion, she argued that, by the self-executing terms of the separation agreement contained in article III, paragraph 3.1, the court determined that child support was retroactive to May 15, 2005, and that the plaintiff had paid only a small portion of the moneys owed under the agreement. On January 2, 2008, the court heard oral argument on this motion, as well as the plaintiff's motion for contempt. Our review of the transcript reveals that the court, on the basis of the arguments of the defendant and the content of her contempt motion, ruled on the question of whether she was entitled, under the self-executing terms of the separation agreement to retroactive child support payments. Furthermore, although the court did not find the plaintiff in contempt, it expressly stated in its memorandum of decision that "[b]y the self-executing terms of the dissolution decree and separation agreement, the child support order is retroactive to the date alimony payments terminated, which was May 15, 2005. The plaintiff owes a child support arrearage of $154,000."

We conclude that the court did not *modify* its May 31, 2006 order to make it retroactive to May 15, 2005,

---

[11] The court's support order was dated by the court May 30, 2006, but date stamped by the clerk's office May 31, 2006. May 31, 2006, is therefore the filing date of the order.

but, rather, ruled on the defendant's motion for contempt as to that order. Furthermore, we conclude that the plaintiff's reliance on the time limitations set forth in § 52-212a and Practice Book § 17-4 is incorrect. The court had both jurisdiction and authority to effectuate its May 31, 2006 child support order in the manner in which it did. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission,* supra, 260 Conn. 246; *Kim* v. *Magnotta,* 249 Conn. 94, 104, 733 A.2d 809 (1999). Therefore, the plaintiff's claim fails.

## II

Next, the plaintiff argues that the court improperly concluded that the original order that modified his child support payments was automatically retroactive by the self-executing terms of the separation agreement that was incorporated into the judgment of dissolution. The plaintiff claims the court abused its discretion when it determined, either expressly or implicitly, that (1) the May 31, 2006 support order was made pursuant to paragraph 3.1 of the separation agreement,[12] rather than paragraph 8.1 of the separation agreement[13] and, therefore, automatically retroactive; (2) the "termination" of unallocated alimony and support contemplated in

[12] Paragraph 3.1 of the separation agreement states: "In the event of the termination of the alimony payments provided in Article VIII hereof during the minority of the children, the parties shall determine the amount of child support to be paid by the [plaintiff] during his lifetime to the [defendant] for the support of each of the minor children and, in the event they are unable to agree, the amount of such child support payments shall be determined by the Superior Court at Bridgeport or any other court of competent jurisdiction. Said amount shall be paid retroactive to the date of the termination of alimony."

[13] Paragraph 8.1 of the separation agreement provides in relevant part: "Commencing August 1, 2003, the [plaintiff], during his lifetime, and ending no later than May 31, 2011, shall pay to the [defendant] as unallocated alimony and child support . . . an amount equal to [45] percent of his first [$350,000] of salary and bonus, and [35] percent of salary and bonus in excess of $350,000 until he has paid a total of [$231,000] from these two sources per year . . . ."

paragraph 3.1 was not intended to be a termination that is based on the remarriage or cohabitation of the defendant as provided in paragraph 8.4; and (3) termination of unallocated alimony and support had occurred in fact. We are not persuaded.

We must determine whether the court abused its discretion in concluding that the plaintiff owed to the defendant a child support arrearage of $154,000 and whether that conclusion was supported by competent evidence. This is so because "[i]n a contempt proceeding, *even in the absence of a finding of contempt,* a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Emphasis in original; internal quotation marks omitted.) *McGuire* v. *McGuire,* 102 Conn. App. 79, 89, 924 A.2d 886 (2007); see *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission,* supra, 260 Conn. 243 (noting Appellate Court repeatedly held even in absence of finding of contempt, trial court has broad discretion to make whole any party who has suffered as result of another party's failure to comply with court order [citing *Nelson* v. *Nelson,* 13 Conn. App. 355, 367, 536 A.2d 985 (1988); *Clement* v. *Clement,* 34 Conn. App. 641, 647, 643 A.2d 874 (1994)]). Furthermore, we note that "[s]uch court action . . . must be supported by competent evidence." *Nelson* v. *Nelson,* supra, 355.

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the

record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 117 Conn. App. 304, 317–18, 978 A.2d 1141 (2009).

On January 2, 2008, the court held a hearing concerning, inter alia, the defendant's motion for contempt during which it received exhibits and heard testimony and oral arguments. The plaintiff, acting pro se, testified extensively, entered exhibits into evidence and presented oral argument in opposition to the defendant's motion. Although the defendant did not testify, she filed with the court a memorandum of law in support of her motion and presented oral argument as well. The court, in its well reasoned memorandum of decision filed January 11, 2008, noted that in its May 31, 2006 order it had determined that the plaintiff had made no alimony payments from June, 2005, and that it had, as a result, ordered the plaintiff to pay child support to the defendant in the amount of $3000 per week, until the plaintiff began again earning a "salary and bonus" as per the separation agreement. It also concluded that by the self-executing terms of the dissolution decree and separation agreement, the child support order was retroactive to the date when the alimony payments terminated. It further determined that "[r]etroactivity under paragraph 3.1 does not require permanent termination of the plaintiff's alimony obligation. Rather, the parties' use of the word " 'payments' " in paragraph 3.1 shows that they intended to eliminate a gap between the cessation of " 'alimony payments' " and the start of " 'child support payments.' "

A thorough review of the record and the briefs and arguments of the parties on this appeal persuades us

that the judgment of the trial court should be affirmed. Our examination of the record reveals that the facts supporting the court's action had a firm foundation in competent evidence and that its conclusions were legally and logically correct. We conclude that the court properly made the defendant whole after she had suffered as a result of the plaintiff's failure to comply with the court's May 31, 2006 child support order. Although the court did not find the plaintiff in contempt, in its memorandum of decision, ruling on the defendant's motion, it properly effectuated its May 31, 2006 child support order. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission,* supra, 260 Conn. 246. Moreover, competent evidence supported the court's action. See *Nelson* v. *Nelson,* supra, 13 Conn. App. 354–55.

We cannot conclude that the court abused its discretion when it determined that, by the self-executing terms of the dissolution decree and separation agreement, the May 31, 2006 child support order was retroactive to the date alimony payments terminated, and, therefore, the plaintiff owed a child support arrearage of $154,000. In the May 31, 2006 child support order, the court concluded that the separation agreement by which both parties were bound was comprehensive and the product of extensive bargaining and that both parties were adequately represented by counsel during its execution. It then concluded that by the terms of that agreement, it could not modify the alimony portion of the unallocated alimony and support payments but that it could modify the child support portion. The court determined that "money is not due [to the defendant for unallocated alimony and support] under [paragraph] 8.1, [therefore] this court will impose a child support order to take effect until the plaintiff begins to earn salary and bonus." It then ordered the plaintiff to pay

to the defendant child support in the amount of $3000 per week.

On the basis of those conclusions made by the court in its May 31, 2006 order, the plain and unambiguous language of paragraph 3.1 of the separation agreement; see footnote 12 of this opinion; and the record before the court—including the testimony of the plaintiff—it is clear that the court, in its January 11, 2008 memorandum of decision, did not abuse its discretion when it determined that by the self-executing terms of the agreement, the May 31, 2006 order was retroactive to the date that alimony payments terminated and that that termination occurred in June, 2005. Therefore, this claim fails.

### III

Last, the plaintiff claims that the court's determination that the original child support order was retroactive by the self-executing terms of the separation agreement resulted in a gross injustice to him, and, therefore, principles of equity require this court to reverse that order. We disagree.

The plaintiff's arguments in support of his claim are rooted in his mischaracterization of the defendant's June 22, 2007 motion, the relief sought therein and the court's ruling in its memorandum of decision. The plaintiff argues that, for various reasons, the court's January 11, 2008 "decision to make support payments retroactive in response to a motion that was not filed until thirteen months after the [May 31, 2006] support order itself was entered" resulted in a gross injustice to him. As stated in part I of this opinion, however, the defendant, on June 22, 2007, filed with the court a motion for contempt in which she sought, inter alia, that the court find the plaintiff in contempt for his failure to pay child support for the fifty-four weeks between the date of his "unilateral termination of unallocated support payments, to May 30, 2006," the date

of the court's child support order. As noted previously, the separation agreement by which the plaintiff was bound was comprehensive and the product of extensive bargaining, and he was represented adequately by counsel during its execution. Therefore, the plaintiff was on notice of its terms from the date of its execution in August, 2003, including that child support payments would be retroactive to the date of the termination of unallocated alimony and support payments. Therefore, no gross injustice resulted from the court's determination that the child support payments were retroactive to the date of the termination of his alimony payments, and the equitable relief requested by the plaintiff is inconsistent with the terms of the separation agreement.[14] Cf. *Rent-A-PC, Inc.* v. *Rental Management, Inc.*, 96 Conn. App. 600, 606, 901 A.2d 720 (2006) ("the existence of a contract, in itself, does not preclude equitable relief *which is not inconsistent with the contract*" [emphasis added]). Therefore this claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] The plaintiff also claims that because of payments he made to the defendant under other provisions of the separation agreement in 2005, the court's determination essentially resulted in a gross injustice to him. He also claims that a gross injustice resulted because his unallocated alimony and support payments were entirely tax deductible while the child support payments are not. Because the child support in question was pursuant to paragraph 3.1, those payments made by the plaintiff pursuant to other provisions of the separation agreement were in addition to the payments in question and, therefore, have no bearing on the issue of child support on appeal, nor do the tax implications of the retroactive child support payments made pursuant to a comprehensive separation agreement that was the product of extensive bargaining, for which he was adequately represented by counsel during its execution.