## JOSEPH ROSENFIELD *v.* LEANA ROSENFIELD
### (AC 20229)

Mihalakos, Pellegrino and Peters, Js.

Argued October 24—officially released December 12, 2000

*Glenn A. Canner,* with whom was *Anthony A. Piazza,* for the appellant (plaintiff).

*Robert M. Wechsler,* for the appellee (defendant).

*Opinion*

PETERS, J. The dispositive issue in this appeal is whether the denial of a motion to dismiss is immediately appealable if the movant argues that the trial court lacked subject matter jurisdiction because of alleged statutory constraints on that court's decision-making authority. The movant does not dispute the general rule that, because such a denial does not preclude further proceedings at trial, the denial of a motion to dismiss ordinarily is not a final judgment and, therefore, not immediately appealable. See, e.g., *Sasso* v. *Aleshin,* 197 Conn. 87, 90, 495 A.2d 1066 (1985). The movant claims that his appeal is different because, by challenging the trial court's statutory jurisdiction, he has presented at least a colorable jurisdictional claim concerning the court's subject matter jurisdiction to proceed any further. We disagree. Accordingly, we dismiss the movant's appeal for lack of a final judgment.

The relevant underlying facts are undisputed. In 1989, the plaintiff, Joseph Rosenfield, and the defendant, Leana Rosenfield, entered into a separation agreement[1]

[1] The separation agreement provided in relevant part: "3.1. The Husband shall, commencing on August 1, 1989, pay to the Wife during his lifetime, until her death, remarriage, cohabitation as defined in Connecticut General Statutes Section 46b-86, as alimony and separate maintenance payments, the sum of Ten Thousand ($10,000.00) Dollars per month, on the first day of each calendar month, in advance. All of said payments shall be made in cash and shall in any and all events terminate, except with respect to existing arrearages, upon the death of the Wife.

"3.2. Should any of those contingencies set forth in Article 3.1. not occur on or prior to the payment made by Husband on July 1, 1999, the Wife shall, thereafter, be entitled to petition the court entering the judgment of dissolution of the marriage of the parties and said court, upon such petition, shall make a determination as to whether the Husband shall have a responsibility to continue making payment(s) of alimony to the Wife based on the respective financial circumstances of the parties as they exist at said time. The petition of the Wife shall not be by way of a Motion to Modify but shall be a de novo review at the time. The new court order shall constitute the rights and responsibilities of the parties and, in the event of a new court

as part of the dissolution of their marriage. Article III, § 3.1, of that agreement required the plaintiff to pay alimony to the defendant on the first day of each calendar month. Article III, § 3.2, permitted the defendant, after ten years, to petition the court to determine, de novo, the appropriate amount of alimony that would thereafter be owed by the plaintiff to the defendant.

Pursuant to the separation agreement, on July 26, 1999, the defendant filed a motion asking the court to "Establish and Fix Alimony, Post Judgment." The plaintiff then filed the motion to dismiss that led to the appeal before us. The plaintiff's motion alleged that, in view of General Statutes § 46b-82,[2] the court lacked subject matter jurisdiction to award any postjudgment alimony de novo to the defendant. At oral argument at trial, the plaintiff elaborated that his claim of lack of subject matter jurisdiction was premised on his allegation that the court did not have statutory jurisdiction to entertain the defendant's motion. The court denied

order, Article 3.1. hereof shall be modified accordingly. After the payment made on July 1, 1999 and until said determination, the payments herein provided for shall cease, but such cessation of payments shall not be deemed to terminate Husband's obligations to pay alimony to the Wife, which, after July 1, 1999, shall be governed by this Article 3.2. The parties specifically acknowledge and agree that the court shall have continuing jurisdiction after July 1, 1999, to make such orders, which orders shall be retroactive to July 1, 1999."

[2] General Statutes § 46b-82 provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

the plaintiff's motion to dismiss. Although it acknowledged the plaintiff's statutory argument, it concluded that it had subject matter jurisdiction to consider the merits of the plaintiff's statutory claim. The plaintiff has appealed.

The gravamen of the plaintiff's argument for immediate appealability of the denial of his motion to dismiss is that, having described his claim in statutory jurisdictional terms, he has raised at least a colorable claim of lack of subject matter jurisdiction. For two reasons, we disagree. First, labels aside, we conclude that the plaintiff has not raised a viable claim of lack of subject matter jurisdiction. Second, even if the plaintiff could be said to have raised a colorable claim of lack of subject matter jurisdiction, he would not be entitled to relief under that doctrine in light of the circumstances of this case.

I

The plaintiff primarily premises his claimed right to appeal immediately from the denial of his motion to dismiss on the proposition that § 46b-82 deprives any trial court of subject matter jurisdiction over a request for postjudgment alimony absent a finding of a substantial change in circumstances. To date, the court in the present case has not addressed the merits of this statutory claim.

The plaintiff's right to appeal depends, therefore, on whether an unresolved claim of lack of statutory jurisdiction is a sufficient basis for an immediate claim of lack of subject matter jurisdiction. Our Supreme Court repeatedly and unconditionally has rejected any equivalence between those claims. Recently, in *Amodio* v. *Amodio*, 247 Conn. 724, 724 A.2d 1084 (1999), that court reiterated the distinction between subject matter jurisdiction and statutory jurisdiction. "Subject matter jurisdiction involves the authority of a court to adjudicate

the type of controversy presented by the action before it. 1 Restatement (Second), Judgments § 11. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action." (Citation omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, supra, 727–28; see also *Craig* v. *Bronson*, 202 Conn. 93, 101, 520 A.2d 155 (1987); *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); *Artman* v. *Artman*, 111 Conn. 124, 129–30, 149 A. 246 (1930).

In *Amodio*, the court further explained that, "[a]lthough related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, supra, 247 Conn. 728. That court noted that this distinction has been recognized and applied in Connecticut from the time of *Terry's Appeal from Probate*, 67 Conn. 181, 185, 34 A. 1032 (1896). *Amodio* v. *Amodio*, supra, 728–29.

On its face, *Amodio* requires us to dismiss the plaintiff's appeal because the plaintiff has alleged only a lack of statutory jurisdiction. The plaintiff argues, however, that *Amodio* was modified by our Supreme Court's subsequent decision in *Smith* v. *Smith*, 249 Conn. 265, 752 A.2d 1023 (1999), which, like the present case, involved construction of § 46b-82.

The plaintiff misreads *Smith*. True, the court in *Smith* repeatedly described the issues before it in terms of

claims relating to statutory jurisdiction. The court took pains, however, expressly to distinguish those statutory issues from issues relating to subject matter jurisdiction. In footnote 4 of that decision, the court cited *Amodio* for the proposition that a "trial court has general subject matter jurisdiction over alimony appurtenant to family relations actions . . . ." Id., 267 n.4. In the same footnote, the *Smith* court further noted that it would treat the matter before it "as if the defendant had labeled the issue as one of statutory authority and not subject matter jurisdiction." Id., 267–68 n.4.

In light of *Amodio* and *Smith*, the plaintiff cannot succeed in his claim that he is entitled to immediate appellate review of the denial of his motion to dismiss. The plaintiff's argument of lack of statutory jurisdiction does not support his claim of lack of subject matter jurisdiction.

## II

Secondarily, the plaintiff relies on Connecticut case law holding that, in some circumstances, a colorable claim of lack of subject matter jurisdiction may provide access to immediate appellate review. Even if we were persuaded that the plaintiff's claim properly could be characterized as raising a colorable claim of lack of subject matter jurisdiction, the cases that he has cited do not support his argument here.

The common feature in the cited cases is that they raise appellate issues about trial court actions that, if improper and uncorrected, arguably could cause the appellant immediate and irreparable harm. In *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 418–20, 426 A.2d 1324 (1980), the trial court had set aside a judgment on the ground that it had not been rendered within the time limits established by General Statutes § 51-29, now § 51-183b. In *Solomon* v. *Keiser*, 212 Conn. 741, 744–45, 562 A.2d 524 (1989), the trial court had

opened and set aside a stipulated judgment, and authorized the release of a previously ordered escrow fund. In *Cardona* v. *Negron*, 53 Conn. App. 152, 154, 728 A.2d 1150 (1999), the family support magistrate, subsequent to a final adjudication of paternity, had ordered the parties to undergo genetic testing. In the most recent cited case, *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 157, 740 A.2d 796 (1999), the workers' compensation review board had ordered a remand to a commissioner other than the one who originally had heard the case. In those cases, the trier of fact had not only rendered a decision on the merits, but also had issued an order that, if carried out, might have been harmful and irreversible to the appellant. Each of them arguably falls, therefore, within the second part of the test established in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), which permits an immediate appeal "where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Unlike the cases cited above, the plaintiff's appeal does not pass the *Curcio* test.

The appeal is dismissed.

In this opinion the other judges concurred.