[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
The Appellate Court, following an en banc hearing in these appeals on June 5, 2002, issued the following order:
After a hearing on the questions why these appeals from the trial court's April 24, 2002 hearing should not be dismissed for lack of an appealable final judgment and whether the trial court's jurisdiction is CT Page 8203-fi properly before this Court on appeal from the April 24, 2002 hearing or whether it must be raised on appeal from the trial court's May 8, 2002 decision, the Appellate Court orders that the Court's Own Motion is marked OFF at this time.
 The trial court is hereby directed, sua sponte, to act on the pending motions to intervene. It is hereby ordered, sua sponte, that the stay of May 10, 2002 is lifted for that limited purpose. The Court's order of May 10, 2002, staying release of sealed documents and all other trial court proceedings based on the trial court's order of May 8, 2002, remains in effect until further orders of this Court.
 The trial court is further ordered to articulate the basis for its authority to open a new file at the request of a non-party, who was not granted intervenor status, over the objections of the parties, more than 120 days after the withdrawal of the actions.[1]
The "Court's Own Motion" which has been marked "OFF" as of the order of June 5, 2002, refers to two orders by the Appellate Court filed in these appeals.[2] These motions raised the obvious jurisdictional issues in these appeals, being the lack of a final judgment; see State v. Curcio,191 Conn. 27, 31, 463 A.2d 566 (1989); and the prohibition against immediate appellate review of a subject matter jurisdiction determination, absent immediate and irreparable harm. Rosenfield v.Rosenfield, 61 Conn. App. 112, 117, 762 A.2d 511 (2000).
The only issue addressed by these appeals is whether the trial court's April 24, 2002 determination that it had subject matter jurisdiction over Its own files was properly made on an application by The New York Times Company (The Times). That determination, to be revisited after briefing, was made during a lengthy hearing on April 24, 2002, to which counsel for all parties were invited. The trial court heard argument concerning all of The Times' claims for relief, and focused primarily on whether it had personal and subject matter jurisdiction to act as requested in The Times' application. The transcript of that hearing was made the court's order[3]
for purposes of these appeals, and at pages 32-33, the following transpired between the court and counsel for the Bridgeport Roman Catholic Diocesan Corporation (the Diocese):
THE COURT: We'll continue with discussion on the CT Page 8203-fj merits. I believe I do have jurisdiction, certainly with respect to what is in the clerk's office in sealed envelopes. I think I do not have jurisdiction to order the parties to file anything [discovery documents not already contained in the files), so I really don't feel that there's jurisdiction to enter that type of order. So we'll move on to the merits . . .
 MR. STAPLETON (for the Diocese): What your honor just said is not a ruling, it's going to be subject to further briefing or —
 THE COURT: Yes, it will be subject to further briefing. Yes, you can address the jurisdictional issue but my determination is that I do have jurisdiction, at least with respect to what's sealed in the files.
 MR. STAPLETON: Your Honor is ruling on that point today?
 THE COURT: Yes, subject to being revisited, but we are going to proceed with the merits of the claim.
At the conclusion of the hearing, the trial court addressed counsel as appears on pages 88-89 of the April 24th hearing transcript in pertinent part:
THE COURT: Well, as I indicated, we want to stop by one o'clock and you're going to get an opportunity to brief, so, unless you're compelled to say something, we'll give you the opportunity to do it in writing. I'm contemplating simultaneous briefs . . . I'd like you to brief the jurisdictional Issue and two aspects of it. One, the claim of continuing jurisdiction of this court over the subject matter, does it exist, and what the subject matter would be. Another point on jurisdiction would be what jurisdiction the court would have over the court files in the possession of the clerk, that remain in the possession of the clerk, is that a separate grounds for jurisdiction. Another issue would be, in terms of the substance of the case, would be the materials in sealed files in the file . . . The privilege issues, what procedure CT Page 8203-fk would be necessary if the court would find that the files would be unsealed, if we get to that point. The process to be followed, your suggestions on that . ..
Simultaneous briefs on these and other issues were ordered filed by May 6 and reply briefs by May 9.
Rather than complying with the briefing schedule, the Diocese on May 3, 2002 filed the first of these appeals, stating through its counsel that "[i]n light of the automatic stay triggered by these appeals; we will not be filing any further briefs at this time." Letter dated May 3, 2002, document number 113 in the trial court clerk's file.
The Rosenfield court distinguished cases allowing an immediate appeal, noting that "[i]n these cases, the trier of fact had not only rendered a decision on the merits but also had issued an order that, if carried out, might have been harmful and irreversible to the appellant." Id., 118. How can it be asserted in good conscience that at the April 24th hearing, this trial court "rendered a decision on the merits" or "issued an order" other than a briefing schedule? The only other order made, as indicated by the above quoted transcript of that hearing in pertinent part, related to an assurance by the court that it had no jurisdiction to order the parties to do anything in the underlying 23 cases.
Within its June 5, 2002 order (see document number 128 in the trial court clerk's file), the Appellate Court also characterizes as "MOOT" the Bridgeport Roman Catholic Diocesan Corporation's petition for review of the trial court's denial of an extension of time to appeal the trial court's May 8, 2002 memorandum of decision on the merits [32 Conn.L.Rptr. 228]. A decision on the public's right to access the sealed materials is substantially delayed because of the automatic stay placed on this court's May 8, 2002 decision regarding disclosure of sealed materials, and that stay will continue indefinitely under the current Appellate Court order, which omits any date for compliance. The result is that the Bridgeport Roman Catholic Diocesan Corporation and individual priest defendants in 23 sexual abuse cases have succeeded, by means of these frivolous appeals, in preventing any timely review, on the merits, of the trial court's vindication of the constitutionally based right of public access to public files.
The Times' application to unseal court files was first filed in March of this year. Since that time, the Vatican, in April, has had an unprecedented conference concerning the issue of sexual abuse of minors CT Page 8203-fl by priests, to which the 12 American Cardinals were summoned. In June of this year, the United States Catholic Bishops also addressed at a conference the issue of sexual abuse of minors by priests, and they currently are involved in formulating a sexual abuse policy.
Any opportunity for the public to consider these extraordinary events, informed by materials currently maintained as secrets in sealed files within the possession of this court, has been irretrievably lost. The procedure adopted by the Appellate Court in these appeals precludes any timely vindication of any public right to access this compelling information.
The trial court, informed by the Practice Book Rules dictating the expeditious resolution of issues created by court orders closing courtrooms or sealing files; see Practice Book §§ 11-20 (e) and 77-1 (mandating an Appellate Court hearing within five business days); and faced with an "emergency motion" and an issue of extraordinary public interest, sought to expedite the proceedings. Such efforts have been rendered futile by the June 5th Appellate Court orders.
Although purportedly putting "off" the jurisdictional issue and its sua sponte motions, the Appellate Court has asserted jurisdiction over these appeals by ordering the trial court's articulation. Preliminary to responding to the Appellate Court's direction and order to the trial court, a review of the proceedings in the trial court is helpful.
On March 26, 2002, The New York Times Company (The Times) filed with the Waterbury Superior Court Clerk's office an "emergency motion" to vacate sealing orders, vacate protective orders and require filing of discovery materials in three[4] of the 23 cases[5] pending before this court prior to their final disposition by withdrawal on March 12, 2001. The motion promised in a footnote that "[a]lthough this motion addresses the three captioned cases, The New York Times Company is seeking leave to file a consolidated omnibus motion requesting identical relief in the approximately 20 other sex abuse cases to which the Bridgeport Roman Catholic Diocesan Corporation is a party." The clerk's office date-stamped the motions in the three cases, but these papers were not docketed by the clerk in the files bearing their captions because those three cases, as well as the 20 others, were withdrawn on March 12, 2001, and could not be restored to pending status.[6]
The clerk's office initially noted these practical problems and reported them to the Presiding Civil Judge in Waterbury. Following consultation with the Judicial Branch Court Operations office, it was CT Page 8203-fm determined that the most effective way to deal with The Times' request to view sealed information within the possession of the court was to invite The Times to file an application for the relief requested in its motions. Accordingly, upon receipt of such application on April 18, 2002, a file was opened under the caption Application of The New YorkTimes v. Sealed Files, X06CV 02 0170932 S, which file serves as a vehicle for compiling all papers related to The Times' application and facilitating the presentment of its claims to the trial court.
The trial court has, in response to the Appellate Court's direction, acted on the pending motions in docket number X06-CV02-0170932-S, and granted the applications to intervene of the Hartford Courant (#103), Boston Globe (#115) and Washington Post (#116). In the 23 Diocese sexual abuse cases, the motions to intervene were never docketed and thus are not pending motions. The court has not and is unable to act on the motions to intervene in the 23 cases. The 23 cases have not been reopened, do not reflect that they have been reopened, and there is no need to reopen them.
The Appellate Court has ordered an articulation of the trial court's authority for the following:
 Opening a New File
A file was opened, Application of New York Times v. Sealed Records, upon receipt of The Times' application. As noted in the court's May 8, 2002 decision, inactive files are by statute (General Statutes §51-52 (b)) and Practice Book Rule (Practice Book § 7.7) in the custody of the court. The authority to open a file under these circumstances is essentially based in the inherent power of the trial court, and the duty of a trial court to address complaints, applications and petitions which are presented to it. This obligation is especially compelling under the circumstances here, where the court by law had custody of the files which were the subject of the application, and interpretation and clarification of court orders is required. The opening of a new file as was made clear to the Diocese at the April 24th hearing, did not prejudice any jurisdictional claim.[7]
 The Non-Party Applicant
The March 26, 2002 motions and the April 18, 2002 application presented by The Times address public access to public records in the custody of the trial court. Pursuant to the Connecticut Rules of Practice (§ 11-20[d]) and the First Amendment of the United States Constitution, The CT Page 8203-fn Times represented the public in seeking access.
 Intervenor Status
The Times is an applicant seeking access to court (public) files, and as such, The Times did not receive or require court permission to file a claim for relief. The applications of the other media petitioners to intervene in the case pending before the court, Application of the New York Times v. Sealed Records, X06 CV 02 0170932S, have been granted. The applications to intervene in three of the 23 sexual abuse cases have not been docketed in those cases, which are no longer pending.
 The Objections of the Parties and 120-day Period After Withdrawal of the Actions
The Diocese and some of the priest defendants objected to the intervention and reopening of the 23 sexual abuse cases. The Diocese also objected to the opening of a new file, and has consistently and repeatedly opposed every effort to address the merits of the claimed public right of access to court records.
The court in its May 8, 2002, memorandum of decision [32 Conn.L.Rptr. 228], pages 12-13, specifically interpreted and clarified the scope, duration and application under changed circumstances of the sealing orders.
In addition to the authority set forth in that decision, confirmation of the authority can be found in the decision of the Connecticut Supreme Court issued subsequent to the trial court's May 8th decision. See AvalonBay Communities, Inc. v. Plan Zoning Commission, 260 Conn. 232 (May 21, 2002) (Avalon Bay). The Avalon Bay decision, authored by the Chief Justice for a unanimous court, articulated for the first time the full scope of the inherent powers and continuing jurisdiction of the trial court.
In Avalon Bay, the statement of the issue at 260 Conn. 240 was whether the continuing jurisdiction of the trial court to enter postjudgment orders after expiration of the four months prescribed by General Statutes § 52-212a, must derive from some source independent of the court's inherent powers such as a statute, an order of injunctive relief, the agreement of the parties, or a finding of contempt. The trial court's action in Avalon Bay had no such independent basis for continuing jurisdiction, and the defendant argued that the trial court lacked authority to order a modification of the conditions of planning and CT Page 8203-fo zoning commission approval. The court's answer was succinct: "We reject this hypertechnical understanding of the trial court's continuing jurisdiction to effectuate prior judgments." Id., 241.
Concerning the interpretation and clarification of the sealing orders in which the undersigned engaged in the May 8th decision, it is compelling to note the Avalon Bay court's holding at 260 Conn. 244:
 Finally, we note that motions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper . . . There is no time restriction imposed on the filing of a motion for clarification.[8]
(Citations omitted; internal quotation marks omitted.) Id.
The Avalon Bay court continues by citing the Appellate Court decision in Zadravecz v. Zadravecz, 39 Conn.App, 28, 30, 664 A.2d 303 (1995), holding that there is no requirement that the same court which rendered the original judgment act on the motion for clarification.
The Times, in support of its application at the April 24, 2002 hearing specifically claimed that the sealing orders had expired, since they were to end no later than the time of jury selection, did not have the scope to cover the materials which were now considered sealed, and were superseded by the extraordinary public interest in these sexual abuse cases. This court's May 8 decision specifically interprets and clarifies the sealing orders. It is difficult to imagine that consideration of the merits would result in elevating institutional interests in covering up a scandal over the legitimate public interest in the issue of the church's response to sexual abuse of minors by priests. It is even more difficult to conceive of a "hypertechnical understanding of the trial court's continuing jurisdiction," preventing the adjudication of such issue.
This court stands on the ultimate holding of Avalon Bay:
Accordingly, we conclude that the trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to cases wherein the CT Page 8203-fp non-compliant party is in contempt, family cases, cases involving injunctions, or cases where the parties have agreed to continuing jurisdiction.
Avalon Bay, supra, 260 Conn. 246.[9]
The application presented by The Times addresses constitutional issues of public access to public records. The materials in the files are related to an Issue of extraordinary public interest. The Diocese, though unsuccessful in nearly every legal claim it has asserted, has nonetheless for years shielded these materials from public review. Connecticut courts have facilitated this process in the following manner: sealing the files over the objections of the victims; delaying the trials;[10] thus encouraging the plaintiffs to enter into settlement agreements containing confidentiality and non-disclosure provisions; and preventing any timely adjudication of the merits of The Times' application for public access.
The underlying 23 sexual abuse cases are about more than the depredations of priest-pedophiles. They fundamentally confront an institutional response that elevates institutional and career interests over the victims, the faith, and the faith community. The cover-up is the heart of the scandal. Today, can it be seriously maintained that secrecy at all costs was a wise or effective policy? It certainly isn't being publicly advocated before the United States Bishop's conference
The media application that initiated the pending case seeks not only access to sealed court files, but to some degree presents a confrontation with the role of the courts in this scandal.
The church's sexual abuse scandal has not been exposed by the courts. Courageous victims and enterprising investigators have circumvented a judicial model of cooperation with the Diocese in endlessly delaying litigation, sealing files and coercing victims into non-disclosure settlements. Rather than seeing the elephant in the room, we are diverted to the presence of the mouse, the issue of which file should have been used.
For this court to ignore its inherent power over its own files, behind the fig leaf of a hypertechnical understanding of its jurisdiction, would be a dereliction of duty, indefensible morally as well as legally.